Ratcliffe *v.* Dougherty.

## Mary Ratcliffe *vs.* Enos Dougherty.

At common law a gift by the husband directly to the wife, without the intervention of a third party, whether by deed or parol, was void, and could not be enforced. *Tourney* v. *Sinclair*, 3 How. R. 324, cited and confirmed.

The courts have declared, that where the intention of the husband is clear and manifest to make a gift to the wife, they will uphold the same and enforce it, if against the personal representatives of the husband, in favor of the wife.

In this case, all the debts of the deceased having been paid, and a considerable property remaining over, in the hands of the administrator, beside the slaves in controversy, the gift would be maintained in the absence of any statutory enactment on the subject.

The act of the legislature of 1839, (Hutch. Code, 439,) entitled "An act for the protection and preservation of the rights of married women," is an enabling statute, and was passed for the purpose of giving married women certain rights which the strict rules of the common law did not permit.

The intention of the act of 1839 was to effect no change whatever in the law relative to gifts, &c., from the husband to the wife, but to leave the rights of the wife, in relation thereto, subject to the provisions of the law as they existed anterior to its passage; and such was the purpose with which the proviso in the first section was adopted.

The legislature did not intend, by the passage of the act of 1839, to take away a single right possessed by married women prior to its passage. *Held*, therefore, that the deed of gift in this case was void, and could not be enforced, at

16 *

law, but that it is valid, and can be enforced, in equity, against the personal representatives of the husband.

In error from the southern district chancery court at Monticello ; Hon. James M. Smiley, vice-chancellor.

The opinion of the court contains a clear statement of the facts of the case.

*Lamkin & Hurst,* for plaintiff in error.

*Glenn,* for defendant in error.

Mr. Justice YERGER delivered the opinion of the court.

The record in this case presents this question : Is a deed of gift made by a husband directly to the wife, without the intervention of a trustee, since the passage of the act of 1839, " to secure the rights of married women," valid, or not ? and can the same be enforced either at law or in equity ? It is certainly true, that by the rules of the common law a gift by the husband directly to the wife, without the intervention of a third party, whether by deed or parol, was void, and could not be enforced. In accordance with this rule, was the decision of this court in the case of *Tourney* v. *Sinclair,* 3 Howard, 324. While such is unquestionably the rigid rule of the common law, courts of equity in this country and in Great Britain have relaxed its stringency, and declared, where the intention of the husband is clear and manifest to make a gift to the wife, they will uphold the same, and enforce it, if against the personal representatives of the husband, in favor of the wife. Judge Story has stated the rule in equity in the following language: " In respect also to gifts or grants of property by a husband to his wife, after marriage, they are ordinarily, but not universally, void at law. But courts of equity will uphold them in many cases where they would be held void at law. If the nature and circumstances of the gift or grant are such, that there is no ground to suspect fraud, but it amounts only to a reasonable provision for the wife, it will, even though made after coverture, be sustained in equity, and vest in the wife, as against the husband, (but not as against his creditors,) an unimpeachable right of prop-

erty therein." 2 Story, 602, 603. In the case of *Lucas* v. *Lucas*, 1 Atkyns, 270, Lord Hardwicke remarked,—" As to the transfer by John Lucas of £1,000 South sea annuities to his wife, in her own name, I am of opinion it is good against the testator himself, and to be answered out of his testamentary share, if sufficient; and in this court, gifts between husband and wife have often been supported, though the law does not allow the property to pass."

The same doctrine will be found recognized in the following cases : 3 P. Wms. 338; 1 Vernon, 244; 3 Atkyns, R. 72; 2 Swanston, 109.

In South Carolina, the rule was distinctly announced in the case of *Elms* v. *Hughes*, 3 Dessausure, 158, which, like the case before us, was the gift of a slave by deed. Gifts of this character, however, are never sustained against creditors of the husband, nor will a court of equity uphold them to the extent of a man's entire estate ; " for it could, in no just sense, be deemed a reasonable provision for her, (which is all that courts of equity hold the wife entitled to,) and in giving her the whole, he would surrender all his own interests." 2 Story, Eq. 602, 603 ; *Beard* v. *Beard*, 3 Atkyns, R. 72.

It appears from the pleadings in the case before us, that the complainant was the second wife of the grantor of the slaves, who died intestate; and that in his lifetime he made similar provision by deed of gift for all of his children by both marriages, except an infant child by the last marriage, born only a few months before his decease. All the debts of the estate have been paid, and a considerable property remains in the hands of the administrator,-besides the slaves in controversy ; and there can be no doubt that the gift would be maintained in the absence of any statutory enactment on the subject. It is true that the administrator says in his answer, that he drew the deed at the instance of the husband, who was only induced to make it, to relieve himself from the urgent importunity of his wife and her father; and that when it was made, he remarked that it was not valid. Without pretending to say whether this would be sufficient to invalidate the deed, if it was proved, we need only remark, that there is no evidence to sustain the state-

ment of the answer, which statement is purely in avoidance, and not responsive to any allegation in the bill.

The question then recurs, has the act of 1839, Hutch. Code, 439, made any change in the law on this subject? That statute is entitled " An act for the protection and preservation of the rights of married women; " and the first section of the law provides that " any married woman may become seized or possessed of any property, real or personal, by direct bequest, demise, gift, purchase, or distribution, in her own name, and as of her own property, provided the same does not come from her husband after coverture." It is contended that this proviso abrogates the former rule in equity, and avoids the gift in this case.

The act of 1839 is evidently an enabling statute. It was passed by the legislature for the purpose and with the intent of giving to married women certain rights, which, by the strict rules of the common law, they did not possess. The act purports on its face to be "for the protection and preservation of the rights of married women." Being an enabling statute, and passed with such a purpose, it surely could not have been the intention of the legislature to take away a single right which they had prior to its passage; and to give the construction contended for to the proviso, would defeat one of the evident purposes of the law. So to construe the law, would make it an act abrogating and taking away the rights of married women, instead of securing and protecting them, which was the avowed object and purpose of its enactment. If, in relation to gifts by deed from the husband to the wife, we were to give the proviso the construction contended for by counsel, the effect would be to declare that a wife could not take property from her husband, either by "bequest or distribution," because the same language is used in relation to "bequests and distribution." that is applied to " gifts and purchases," and the proviso is equally applicable to the one as to the other. We think the evident intention of the legislature, by the act of 1839, was to effect no change whatever in the law relative to gifts, &c. from the husband to the wife, but to leave the rights of the wife in relation thereto subject to the provisions of the law as they

existed anterior to its passage; and that such was the purpose with which the proviso in the first section was adopted.

By reference to other sections of the act, it will be seen that the slaves which a married woman might have at the time of her-marriage, and such as she might subsequently acquire, were to be held by her exempt from any liability for the debts or contracts of her husband; and it is more than probable that the legislature supposed that the general language of the first section, unrestrained by the proviso, would have enabled the husband to convey property to his wife, to be held in like manner with property derived from other sources; and that by such means, the act might have been used as an engine of fraud in defeating the rights and claims of creditors. We have no doubt that the proviso was introduced for the purpose of guarding against such an abuse of the privileges conferred by the statute upon married women. But, as before remarked, we cannot suppose for an instant, if we look at the whole scope and policy of the law and the evident intention of the legislature, and also keep in view that it is an enabling and not a restraining statute, that the legislature intended to take away a single right possessed by married women prior to the act of 1839. We are, therefore, of opinion, that the deed of gift in this case was void, and could not be enforced, at law; but that it is valid, and can be enforced, in equity against the personal representatives of the husband. The decree of the vice-chancellor, dissolving the injunction and dismissing the bill, is erroneous, and must be reversed, and a decree entered here perpetually enjoining the judgment at law.

SMITH, C. J., having been of counsel, gave no opinion.