## MARY WELLS *vs.* MARY P. TREADWELL.

It has been settled by this court, that a deed of gift directly from a husband to his wife, where there is no ground to suspect fraud, and it only amounts to a reasonable provision for the wife, is valid in equity against the claim of the husband or his representatives. *Ratcliffe* v. *Dougherty*, 24 Miss. R. 181; *Warren* v. *Brown*, 25 Ib. 66. *Held*, that regarding this transaction as a direct conveyance by the husband to the wife, and there being no circumstance to show fraud, there is nothing disclosed in the bill to impeach its fairness and validity.

A voluntary conveyance is presumed to be fraudulent as to subsequent purchasers; but this presumption may be destroyed, and if the conveyance, though voluntary, appear to have been made upon a meritorious consideration, without fraud or covin, it is not void against a subsequent purchaser.

Not all voluntary conveyances, but all fraudulent conveyances, are void.

The act of 1846, (Hutch. Code, 498, § 7,) which requires a schedule of all such property to be recorded, does not make that a condition to the right of property in the wife, nor is there any penalty annexed to the failure to make a registration of it. *Held*, that the failure to make the registration does not work a forfeiture of the property.

The act of 1839 in regard to the rights of married women, recognizes the absolute property of the wife in her slaves; and certainly contemplates that they are to remain in such a condition as that the wife's property in them can be readily asserted without embarrassment; and the legislature did not intend to vest a distinct estate in the slaves for any term or period of time in the husband, but simply to give him the management of them, the direction of their labor, and the receipt of its proceeds.

On appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

Mrs. Treadwell, by her next friend, George Robinson, filed her bill in the superior court of chancery against Mary Wells and Owen G. Treadwell, the husband of the said Mary P. The bill shows that the said Mary P. Treadwell and Owen G. Treadwell were married in the State of North Carolina in the year 1823. That she received a considerable negro property from her father at the time of her marriage. That she and her husband, Owen G. Treadwell, removed to and settled in this State about the year 1835. That her said husband sold a negro woman by the name of Dice, or Dicy, which she received from her father as aforesaid, at the time of her marriage, to a negro trader by the name of Netherland. That in the year 1845, said Netherland brought said negro woman, Dice or Dicy, to the county of Scott, in this State, the residence of complainant, said Netherland also owning two children of said woman, born after said Netherland became the purchaser. Complainant being very anxious to purchase said negro woman and her children, bought them from said Netherland at the price of $1,000, and to enable her to make the purchase and payment, her said husband gave her $500 in cash, and she and her husband also gave said Netherland another negro, which came by complainant from her father, valued at $500, to said Netherland, for said negro woman, Dicy and her two children, so sold by said Netherland to her, and received a bill of sale therefor in her own name. That the money and slave so given her by her husband, was intended by him as an advancement or settlement upon her, in consideration of the sum and property he had received and used of hers at the time of the marriage. That he was unembarrassed at the time. That her said husband sold one of Dicy's children, so bought by her, to one Banister Wells, and that said negro is now in the possession of Mary Wells. That complainant did not join in the bill of sale to Wells, and received no portion of the purchase-money. Prayer that said negro may be delivered up to her as her separate property, &c.

To this bill a general demurrer was filed, which was over-

ruled by the court, and defendant, Mary Wells, appealed to this court.

*Lawson*, for appellant.

The marriage between complainant and her husband, Owen G. Treadwell, the bill shows, took place in North Carolina in 1823. By the laws 'of that State, upon marriage, the husband became the owner of all the personal estate of the wife in possession, or reduced by him into possession during coverture. In other words, the rights of the husband are the same in that State over his wife's property, as they were at common law.

The husband was the owner of all complainant's property given her by her father before they became domiciled in this State, and before the passage of the law of 1839 protecting the rights of married women. The law of 1839 gave to the wife power to become possessed of property by gift, demise, or purchase, provided the same does not come from her husband. The property in question certainly comes from the husband, his means and property alone prays for it, and the law which allows a wife to own a separate property, prohibits her from acquiring that property with her husband's means. The bill of sale executed by Netherland to complainant did not constitute a title. The bill of sale was unnecessary to pass title. The payment of the price and delivery of possession perfected the title.

The money and negro given to Netherland, were the means of Owen G. Treadwell, and not complainants, and hence the property in controversy received in exchange therefor, in justice and equity, are also his. The conveyance by the husband to the wife, even if it had been by regular deed, is void as to the creditors of, and purchasers from, the husband. *Ratcliffe* v. *Dougherty*, 24 Miss. R. 181.

Here was no conveyance by writing from husband to wife. There was no consideration deemed valuable in law, and hence the pretended gift is by our statute declared to be fraudulent, unless reduced to writing and acknowledged and recorded, &c. Hutch. Code, 637, 638.

No covenant or agreement in consideration of marriage,

shall be good against a purchaser not having notice thereof, unless proved and registered, &c.   Hutch. Code, 605.

A conveyance to trustees for a wife by her husband, is deemed fraudulent as against a *bonâ fide* purchaser at a subsequent time.   *Cathcart et al.* v. *Robinson*, 5 Peters, R. 279–282. The subsequent sale is considered as proving conclusively, that the voluntary deed was executed with a fraudulent intent to deceive subsequent purchasers.

The rule in England is, that a voluntary conveyance is void as against a subsequent purchaser with notice.  For a collection of all the authorities on the subject of voluntary conveyances being void, I refer the court to 1 Amer. L. Cas. 77, 78, Hare & Wallace's notes.

The complainant does not show that she had a schedule of her separate property, recorded as required by the law of 1846. Hutch. Code, 498, § 7.   What effect this may have on her rights, as against creditors and purchasers from the husband, remains to be settled by this court.

*T. J.* and *F. A. R. Wharton*, for appellee.

The fact that the husband had expended for his own use all the property received at their marriage from the wife's father, is a sufficient consideration, as between them, and against subsequent creditors of the husband, for such advance by the husband.   Such advance would be void as to existing creditors of the husband at the date of such advance, but the bill states that he had none then.   An advance, under these circumstances, from the husband to the wife, requires no such consideration as the above.   The title to the slave was made directly to the complainant with the consent of the husband.   She might have contented herself, in the first instance, by claiming upon that title, as against all subsequent creditors of her husband, and all persons claiming title through her husband.   But she chose, in order that the whole facts connected with the purchase of the negro by her might be presented, to specify how she became possessed of the means to buy said negro, and thus shorten the controversy, as the merits of the case would thus arise on demurrer to the bill.

Wells *v.* Treadwell.

Chancellor Kent says, " Gifts from the husband to the wife may be supported as her separate property, if they be not prejudicial to creditors, even without the intervention of trustees." 2 Kent, 163 (2d ed.); J. C. R. 537. Marriage is a valuable consideration for an advance of the kind made in this case, where it is in pursuance of an agreement in writing entered into prior to the marriage; and such advances are valid, both against creditors and purchasers. 3 J. C. R. 481; 12 Serg. & Rawle, 448; 8 Wheat. R. 229. In the case from 3 J. C. R. 481, the court enter very fully into the whole doctrine, and review the authorities and deduce the rule, that though there might have been doubts entertained at one time, it seems to have been long settled, that if the party be not indebted at the time, and has no fraudulent views, a subsequent creditor cannot impeach a prior settlement, on the mere ground of its being voluntary. In 2 Atk. R. 519, Lord Hardwicke held a post-nuptial settlement good, there being no proof of the husband being indebted at the time. See also 12 Vesey, 136, 148; 5 Ib. 386, note, that such advances are only fraudulent and void as against such creditors as were creditors at the time they were made. The only possible exception will be found to be as follows: that where there are no existing creditors, but such advances are made in contemplation of future debts, and with a view to keep the property in the family, so as to exclude such future debts, such advances are fraudulent. The whole doctrine is exhausted in the opinion of Chief Justice Marshall, in *Sexton* v. *Whealon and wife;* 8 Wheat. 229, 252, reviewed at length in 2 Am. Lead. Cases, p. 54. I ask the attention of the court also to the case of *Radcliffe* v. *Dougherty,* 24 Miss. 182; and to *Warren* v. *Brown,* 25 Miss. R. 74.

As to the point that no schedule was recorded by Mrs. Treadwell, I do not think it necessary to say any thing. The act upon the subject is only directory, as was held by the supreme court of the United States in *Groves* v. *Slaughter,* in relation to the act prohibiting the introduction and sale of negroes as merchandise. No penalty is affixed to a violation of the act in this case. It does not declare that a married woman shall be incapable of holding property in her own name and right,

unless a schedule of such property is recorded. Neither does it declare that upon such failure it shall become subject to debts of the husband, or he be able to pass the title to a *bonâ fide* purchaser without notice of the title held by her.

Let it be admitted that the husband was entitled to the usufruct, (even admitting title in the wife,) and that, therefore, the wife in this case would not be entitled to hires, it does not deprive the wife of her right to recover possession of the slave in specie, if to be had, or if not, his value. The prayer is for possession, or value, and for hires. If she is entitled to possession, but not to hires, that relief, at least, should be denied. But then under the prayer for general relief, the court may decree any relief not inconsistent with the case made.

There are many authorities to the effect that every voluntary deed of settlement made by a husband to his wife is not fraudulent against creditors, though the husband was in debt at the time. Indeed such is the rule in all cases where the transaction is *bonâ fide.* 1 Bay, R. 173. Lord Mansfield so held in Cowp. 436, 710. He broadly decides that such settlement is not fraudulent, because there were creditors at the time, if the transaction was a fair one. In the case quoted from 1 Bay, the court say, " the statute of 13 Elizabeth does not go to voluntary conveyances, merely because they are voluntary, but to such as are fraudulent. A fair, voluntary conveyance, may be good against creditors notwithstanding its being voluntary. The circumstance of a man's being in debt at the time of making such a deed, may be an argument of fraud, but then the grand question in every case is, whether the act done is a *bonâ fide* transaction, or whether it is a trick to defraud creditors."

The mere fact that the husband was in debt at the time of the settlement will not vitiate it, unless his debts were something like equal to his estate. 4 Dessaus. R. 227. In *Lucas* v. *Lucas*, 1 Atk. R. 270, Lord Hardwicke said, that in equity, gifts between husband and wife had been often supported, though the law does not allow the property to pass; and in *Pawlet* v. *Delard*, 2 Ves. 666, the same eminent jurist maintained the same principle.

Not only under antenuptial agreements will she be able to

hold separate estate, but also under a contract during the matrimonial connection made between herself and her husband alone; and her right to hold the same will be enforced as if made with a stranger. 4 Bou. Inst. 274, § 3998. And this without the intervention of a trustee. Ib.; 2 Story, Eq. R. § 1380; 4 Barb. Sup. Ct. R. 407; Fonbl. Eq., book 1, ch. 2, § 6, note n.

In the case of *Salmon* v. *Bennett*, 1 Conn. R. 525–558, reviewed in 2 Am. Lead. Cases, 83, the court, after a most searching scrutiny of the authorities, says, the rule generally established in this country may be taken to be, that a voluntary post-nuptial settlement on a wife and children, will be good, if the husband be not in debt at the time, or the settlement be not disproportioned to his means, taking into view his debts and situation ; in short, if he be *bonâ fide* reasonable and clear of any intent, actual or constructive, to defraud creditors. 4 Mason, 444, 451; 4 Met. 486, 488.

The question whether Mr. Wells, husband of the appellant, had notice of the claim or title of Mrs. Treadwell when he bought said negro, does not arise in this case, any more than it would in a case in which the husband sells a negro held by his wife as her distributive share of her father's estate, where the marriage and distribution both took place after the passage of the act of 1839. If Mrs. Treadwell held the title to the negro, she could not be divested of it by any act of her husband. The bill alleges that the sale was without her privity or knowledge. There is no pretence to charge her with any fraud, for the case stands on demurrer to her bill, denying all participation in the sale and receipt of the purchase-money.

In *Ratcliffe* v. *Dougherty*, before cited, this court held that the act of 1839 was an enabling statute, and repel the argument drawn from the proviso that the wife should hold, &c., if the thing held did not come from the husband, &c.

On the point that no record was made of the claim of Mrs. Treadwell, I refer your honors to *Palmer* v. *Cross et al.* 1 S. & M. 65.

Mr. Justice HANDY delivered the opinion of the court.

The substance of this bill is, that the complainant, Mary P. Treadwell, was married to her husband, Owen G. Treadwell, in the State of North Carolina, in the year 1823, and received a considerable estate, partly in slaves, from her father, which came to the possession of her husband; that she and her husband removed to this State in the year 1835, bringing with them said slaves, and her husband afterwards sold much of the property which came to her from her father, including two slaves named Dicey and Eda; that afterwards, in the year 1844, her husband, being then unembarrassed, and for the purpose of making a settlement upon her to reimburse her for the property which he had disposed of, which came to her from her father, gave her the sum of five hundred dollars, the proceeds of the sale of another slave which came from her father, and also permitted her to use another slave, which also came to her from her father. This last-mentioned slave and the sum of five hundred dollars she gave for the slave Dicey and her children, Albert and Kitty, and received a bill of sale in her own name, as a settlement from her husband, and being the only settlement made by him for the use of the entire estate which she received from her father. The bill further states, that afterwards, in the year 1848, her husband sold the slave Albert to one Banister Wells, without her knowledge or consent, and appropriated the proceeds to his individual use, and that Mary Wells now holds this slave in right of Banister Wells.

The object of the bill is to recover this slave, or his value, with hire.

The defendant filed a general demurrer, which was overruled; and from that decree this appeal is prosecuted.

The principal question presented by counsel in support of the demurrer is, whether the arrangement by which the slave Dicey and her children were conveyed to the complainant, is to be considered fraudulent as to the subsequent purchaser, so as to render the subsequent sale by the husband valid against the right of the wife.

It has been settled by this court, in the cases of *Ratcliffe* v. *Dougherty*, 24 Miss. 181, and *Warren* v. *Brown*, 25 Ib. 66, that a deed of gift directly from a husband to his wife, where there

Wells *v.* Treadwell.

is no ground to suspect fraud, and it only amounts to a reasonable provision for the wife, is valid in equity against the claim of the husband or his representatives. But it cannot be sustained, either at law or in equity, against the creditors of the husband who were such at the time it was made; though it is valid as to subsequent creditors, if made *bonâ fide*, and not in contemplation of such future indebtedness. *Sexton* v. *Wheaton*, 8 Wheat. 229; *Townsend* v. *Wyndham*, 2 Vesey, 11; *Reade* v. *Livingston*, 3 J. C. R. 481; Fonbl. Eq. b. 1, ch. 4, § 12.

The bill here alleges, and the demurrer admits, that the husband was not in debt at the time the arrangement in question was made, and no other circumstance is made to appear showing that the transaction was founded in a fraudulent intent. Regarding the transaction, therefore, as a direct conveyance by the husband to the wife, as we think it was in substance and legal effect, there is nothing disclosed in the bill tending to impeach its fairness and validity.

But it is insisted, in behalf of the appellant, that this being considered as a voluntary conveyance by the husband to the wife, the subsequent sale to Wells is conclusive evidence that the conveyance to the wife was collusive and fraudulent; that the rule is, that, as to subsequent purchasers, a voluntary conveyance is absolutely void *per se*.

This is not the approved doctrine upon the subject. It has the sanction of many of the authorities, founded on too narrow a construction put upon the provision of the statute 27 Eliz. declaring certain conveyances " void," the force of which is well explained by Chief Justice Spencer, in *Anderson* v. *Roberts*, 18 J. R. 515.

We think that the true doctrine upon the subject is, that a voluntary conveyance is presumed to be fraudulent as to a subsequent purchaser. Fonbl. Eq. b. 1, ch. 4, § 13, n. *f*, and authorities there cited. But this presumption may be destroyed, and if the conveyance, though voluntary, appear to have been made upon a meritorious consideration, without fraud or covin, it is not void against a subsequent purchaser; for, in the language of Lord Mansfield, " there is no part of the statute which

61 *

affects voluntary settlements *eo nomine*, unless they are fraudulent." Ib.; also *Doe* v. *Routlidge*, Cowp. 708; *Verplank* v. *Sterry*, 12 I. R. 555.

Chancellor Kent, in *Sterry* v. *Arden*, 1 J. C. R. sanctions the doctrine that voluntary conveyances are absolutely void as to subsequent purchasers, and holds that such is the rule held by the English authorities. On the contrary, Chief Justice Marshall, in *Cathcart* v. *Robinson*, 5 Pet. 264–281, held that the rule settled by the English cases at the period of time referred to by Chancellor Kent, and the sound rule upon the subject is, that " a subsequent sale without notice, by a person who had made a settlement not on valuable consideration, was presumptive evidence of fraud, which threw on those claiming under such settlement the burden of proving that it was made *bonâ fide*." We consider this as the true exposition of the statute; for it does not declare all voluntary conveyances, but all fraudulent conveyances, to be void. Otherwise, the statute, which was intended to prevent frauds, might be turned into the most effectual instrument of perpetrating frauds, by placing it in the power of a party who had made a *bonâ fide* conveyance, upon a just and praiseworthy consideration, to defeat the act and violate all morality and justice by a subsequent sale for his own benefit.

Is the presumption of fraud, then, rebutted by the facts of this case, as they are presented?

It appears by the pleadings, that the husband had disposed of the estate which had come to his wife from her father, and in order to secure to her something as a settlement, the arrangement was made by which these family slaves were conveyed to her. This was certainly a just and meritorious consideration; and the husband appearing not to be indebted at the time, and no other motive to a fraudulent act being shown, that consideration must be held to be just and legal, and sufficient, in the absence of all proof of a fraudulent design, to support the conveyance.

Again. It is said that the fact that a schedule of this property is not shown to have been recorded under the provisions of

Wells *v.* Treadwell.

the 7th section of the act of 1846, Hutch. Code, 498, is a circumstance prejudicial to the claim of the complainant. That statute does not in terms, nor in necessary legal effect, render the registration of such schedule a condition to the right of property in the wife, nor is there any penalty or forfeiture annexed to the failure to make a registration of it. It was doubtless intended as a means of notice that the property belonged to her; but as the legislature have not made it necessary to the enjoyment of the right of property, nor given any distinct effect to the failure to perform the act, we cannot say that the failure to make the registration works a forfeiture of the property. Under certain circumstances, and in connection with other facts tending to show fraud, it might be considered as indicating a fraudulent arrangement; but of itself it could scarcely be considered as a badge of fraud.

Again. It is insisted, that inasmuch as the husband had "the control and management of the slaves, the direction of their labor, and the receipt of the productions thereof," under the provisions of the married women's act of 1839, he had the right to sell his life-estate in the slaves, and to that extent, that the sale of the husband passed a good title.

We do not think that this position is in accordance with the spirit of the act of 1839. That act recognizes the absolute property in the slaves in the wife, and contemplates that they are to remain in such a condition as that the wife's property in them can be readily asserted without embarrassment, for her own benefit, upon the death of her husband, or for the benefit of her children. This right might be greatly embarrassed if the husband had the power to take the slaves from the possession of the wife during his life, and sell them for such a time to strangers, who might take them to parts unknown and cause a total loss of them to the wife and her children. We do not think that the legislature intended to vest a distinct estate in the slaves for any term or period of time in the husband, but simply to give him the management of them, the direction of their labor, and the receipt of its proceeds, in such a manner as not to interfere with or embarrass the right of property in the wife at all times.

The decree of the chancellor is in accordance with the foregoing views, and is therefore affirmed, and the cause remanded, and the defendant below required to answer within sixty days.