## WILLIAMS *vs.* AVERY.

[BILL IN EQUITY TO PROTECT WIFE'S SEPARATE ESTATE AGAINST JUDG-
MENT CREDITORS OF HUSBAND.]

1. *What words will create separate estate in wife.*—A conveyance of a
slave "to R. W., wife of W. W., and her bodily heirs, to their exclu-
sive use, benefit, and behoof," creates a separate estate in R. W., to
the exclusion of the marital rights of her husband.

2. *Husband's marital rights; possession between tenants in common.*—The
possession of one tenant in common being the possession of both, the
husband's marital rights attach to slaves which are in the possession
of a person who is a tenant in common with his wife.

3. *Validity of voluntary conveyance as against creditors.*—A voluntary
conveyance by a husband to his wife, if free from fraud, actual or
constructive, will sometimes be upheld in equity, as against subse-
quent creditors of the husband; but proof of an intent to hinder and
defraud his creditors, will avoid the deed, and render the property
subject to subsequent debts.

APPEAL from the Chancery Court of Randolph.
Heard before the Hon. JOHN FOSTER.

THE bill in this case was filed by Mrs. Ruth Williams,
suing by her next friend, against her husband, William Wil-
liams, B. B. Avery, W. F. Meador, and J. J. Meador ; and
sought to protect the complainant's interest in a slave
named Nancy, which she claimed as her separate estate,
and to enjoin the sale of said slave under executions against
her husband. The complainant's title to the slave, as
stated in the bill, was founded on an alleged gift from her
mother, Mrs. Mary Sunday, by which a slave named Ruth,
with her future increase, was conveyed to the complainant
and her sister, Mrs. Rebecca McCreary, free from the debts,
contracts, and liabilities of their respective husbands ; a
subsequent division of the slaves, in 1845, by agreement,
between the two sisters, when a boy by the name of Pick-
ens was allotted to the complainant ; a sale of the boy
Pickens by her husband, at her request, and the investment
of the proceeds of sale in the purchase of the woman

Nancy. At the time of the division of the slaves between the complainant and her sister, McCreary and wife executed to Mrs. Williams a relinquishment of all their title to the boy Pickens; and after the purchase of the woman Nancy, Mrs. Williams procured from the vendor a bill of sale conveying said slave to her. A deeree *pro confesso* was entered against William Williams. The other defendants filed answers, denying all the material allegations of the bill, and insisting that the slave was subject to their executions. On final hearing, on pleadings and proof, the chancellor dismissed the bill, at the costs of the complainant's next friend; and his decree is now assigned as error.

RICHARDS & FALKNER, for appellant.

JNO. T. HEFLIN, *contra.*

STONE, J.—We think the testimony of the witnesses Reaves and McCreary fully establishes the fact, that the copy-deed attached to their depositions is a substantial copy of the title to the slave Pickens, as the same was executed by McCreary and wife to Mrs. Williams. But we do not concur with the solicitor of appellee, in the opinion that, under that deed, the title vested in Mr. Williams, the husband of appellant. Mrs. Williams was then a married woman; and the language of the conveyance is, "We, John McCreary, and Rebecca McCreary, his wife, above-named, have relinquished, and do by these presents relinquish to the said Ruthy Williams, wife of William Williams, and her bodily heirs, to their exclusive use, benefit and behoof, all the right, title," &c. The word *exclusive* is sufficient to exclude the marital rights of Mr. Williams. *Gould v. Hill*, 18 Ala. 84.

We suppose the argument against the sufficiency of the language to exclude Mr. Williams' marital rights, rests on the supposition, that the words "*to their exclusive use*" give the use and enjoyment of the property jointly to Mr. and Mrs. Williams. Such is not its import. The word *their* refers to *Mrs. Williams and her bodily heirs;* and the

name of her husband was inserted solely for the purpose of rendering the description of *the grantee* (Mrs. Williams) more complete.

It does not vary this question, that the phrase *bodily heirs* is one of mere limitation. We are not inquiring whether any persons could claim this property as purchasers, under that designation. We are in search of the meaning which the grantor attached to the language he employed; and, however much he may have mistaken the legal import of his own language, still he believed he was describing a definite class of persons; and when he added, that the slave was conveyed to "*their exclusive* use", his meaning was, that the slave should go exclusively "to Ruthy Williams and her bodily heirs".—See *Johnson v. Johnson,* 32 Ala. 642.

[2.] The bill in this case alleges, that Mrs. Sunday, the mother of complainant and of Mrs. McCreary, gave to them the slave Ruth and her future increase, and secured the property to their sole and separate use; "and delivered said woman and her children to the said Rebecca (McCreary) for the use of the said Rebecca and your oratrix". The bill then alleges, that a division of the property was made by the two sisters; that on such division the boy Pickens fell to Mrs. Williams, and that thereupon Mr. and Mrs. McCreary conveyed the slave Pickens to the exclusive use of Mrs. Williams *and her bodily heirs.* Under these averments, the right of Mrs. Williams to claim the slave Pickens as her separate estate rests on the terms of the alleged gift of Mrs. Sunday, the mother. The proof utterly fails to show that the property was secured to the separate use of Mrs. McCreary and Mrs. Williams, by the terms of the gift from their mother; and, in fact, fails to show that there was such gift. The averments of the bill, then, considered in connection with the entire failure to prove that the property was secured to the separate use of the two sisters by the terms of the gift from their mother, make out a case of tenancy in common between Mrs. McCreary and Mrs. Williams, the possession being in Mrs.

McCreary. The possession of one tenant in common, is the possession of both; and, under well-settled rules, the marital rights of Mr. Williams attached to his wife's interest in the property thus held.—See *Walker v. Fenner*, 28 Ala. 367, and authorities cited.

[3.] The property, then, at the time of the division, was the property of Mr. McCreary and Mr. Williams, so far as the testimony in this record enables us to ascertain its ownership; and the attempt to secure the slave Pickens to the exclusive use of Mrs. Williams was but an attempt by the husband to settle his own property on his wife. This, if free from fraud, actual or constructive, might in some cases be done, and the transaction would be upheld in equity. See *Williams v. Maull*, 20 Ala. 730, *et seq.; Wilson v. Sheppard*, 28 Ala. 629; *Cole v. Varner*, 31 Ala. 244. It does not appear in this case, that the debts under which this property was sold, had any existence when the title was thus attempted to be settled on Mrs. Williams. But the proof shows that, in that attempted settlement, the parties were influenced by the intention to hinder and defraud the creditors of Mr. Williams, the husband. This *intent to defraud* avoided the conveyance, and renders the property subject to after-contracted debts of Mr. Williams.—See *Huggins v. Perrine*, 30 Ala. 398, and authorities cited; *Kavanaugh v. Thompson*, 16 Ala. 817.

If it be objected that this defense was not insisted on in the answer, and therefore cannot be allowed, the answer is found in the fact, that the equity of this feature of complainant's bill does not rest on the separate estate created by the act of Mr. Williams, the husband. It goes beyond that, as we have shown, and claims that the property was secured against Mr. Williams' marital rights, by the terms of Mrs. Sunday's gift. Under these circumstances, even if the variance between the averments and the proof do not defeat the present bill—a question we need not and do not decide—still the complainant is in no condition to invoke the rule of practice above supposed. The complainant does not, in her bill, rely on the title created by her hus-

band, and cannot claim that the defendants should specially avoid that which in the bill appears to be simply an incidental averment.

It being shown that the slave Pickens never was the property of Mrs. Williams, it follows that the money for which he was sold was not hers; and hence her claim of the slave Nancy has no foundation to rest on.

Decree of the chancellor affirmed.