# Seals *v.* Robinson & Co.

*Bill in Equity to set aside Conveyance of Land as Fraudulent and Void.*

1. *Bill in equity; rule of pleading.*—It is a cardinal rule of equity pleading under the statute, as it was prior to its enactment, that the bill must show by direct and positive averments, with clearness and accuracy, all matters essential to the complainant's right to relief; they must not be made to depend upon inference, nor will averments of them which are ambiguous, uncertain and inconclusive, be accepted as sufficient.

2. *Bill in double aspect; when defect not reached by motion to dismiss or general demurrer.*—While a bill in equity framed in a double aspect is demurrable, if either aspect is insufficient to support the right of complainant to relief, advantage of the defect must be taken by demurrer specifying the ground of objection, and affording complainant an opportunity of removing it by amendment; advantage of it can not be taken by motion to dismiss for want of equity, or by general demurrer.

3. *Motion to dismiss bill for want of equity; its office.*—A motion to dismiss a bill for want of equity is not the equivalent of a demurrer, and is not appropriate to reach mere defects or insufficiencies of pleading curable by amendment; but it should be entertained only when, admitting the facts apparent on the face of the bill, whether well or illy pleaded, the complainant is without right to equitable relief.

4. *Objections to evidence in equity; practice in reference to.*—In chan-

| 75 | 363 |
| 93 | 108 |
| 93 | 196 |
| 75 | 363 |
| 97 | 388 |
| 75 | 363 |
| 100 | 152 |
| 102 | 380 |
| 102 | 430 |
| 75 | 363 |
| 103 | 280 |
| 104 | 212 |
| 104 | 339 |
| 104 | 602 |
| 105 | 316 |
| 105 | 613 |
| 75 | 363 |
| 109 | 606 |
| 75 | 363 |
| 117 | 410 |
| 117 | 412 |
| 117 | 581 |
| 75 | 363 |
| 121 | 111 |
| 122 | 320 |
| 75 | 363 |
| 125 | 615 |
| 75 | 363 |
| 130 | 268 |
| 130 | 589 |
| a130 | 590 |
| 131 | 136 |
| 131 | 543 |
| 75 | 363 |
| 132 | 109 |
| 132 | 200 |
| 75 | 363 |
| 134 | 342 |
| 75 | 363 |
| 137 | 436 |
| 137 | 572 |
| 75 | 363 |
| 141 | 387 |
| 142 | 620 |

[Seals v. Robinson & Co.]

cery, objections to the admissibility of evidence ought to be reduced to writing, and a reference to them should be incorporated in the note of submission, or they should otherwise be called directly to the chancellor's attention; and if this is not done, and the chancellor fails to notice them, the presumption is indulged that they were waived.

5. *Voluntary conveyance; when infected with actual fraud, may be attacked by creditors, existing or subsequent.*—A voluntary conveyance is valid and operative as to subsequent creditors, if it be not shown that there was *mala fides* or fraud in fact in the transaction; but, if actual fraud is shown, whether directed against existing or subsequent creditors, either class can successfully impeach and defeat it, so far as it affects the right to satisfaction of their debts.

6. *Same; proof of fraud.*—When a voluntary conveyance is attacked for actual fraud by a subsequent creditor of the grantor, the general rule applies, that fraud will not be presumed, but must be proved; and the burden of its proof is on the complainant; but the rule does not require that the fraud must be proved by direct and positive evidence; it may be shown by circumstances leading to a rational, well founded conviction of its existence.

7. *Conveyance of husband to wife; estate created by.*—As a direct gift or conveyance by the husband to the wife is valid only in a court of equity, it is regarded as creating in the wife an equitable separate estate, although it does not contain words in exclusion of the husband's marital rights; and hence, the estate thereby created is not within the influence or operation of the statutes enabling the wife to take and hold property owned by her at the time of marriage, or by her subsequently acquired.

8. *Voluntary conveyance by husband to wife; badges of fraud on attack by subsequent creditor.*—When a voluntary conveyance, executed by the husband to his wife, is attacked for actual fraud, the extent and value of the property conveyed, its kind and character, are all facts to be considered in determining whether the transaction is infected with a covinous intent; and the fact that by the deed the husband strips himself of all visible, tangible property subject to execution at law, retaining only choses in action of uncertain, doubtful value, while not in itself conclusive, but, it may be, weak and inconclusive evidence of fraud, will awaken suspicion, and add strength to other circumstances which may also be, in themselves, insufficient to establish a fraudulent intent.

9. *Same; intent of donor must prevail on attack for actual fraud.* In such case, the wife being a mere volunteer, and having no equity which will protect her against the rights of creditors, it is not her intent in accepting the conveyance, but the intent of the husband in executing it, which is material; his fraud being visited upon her, though she may be *doli incapax,* or her intentions may be fair and honest.

10. *Same; attempt to create a statutory estate in wife a badge of fraud.* A provision in such conveyance, that the wife shall hold the property conveyed "as her separate property under the statutes of the State governing the estates of married women," although it may not be valid as a limitation upon the estate conveyed, creating in her a statutory estate, is indicative of an intention on his part to do so, and thereby vest in himself, under the statute, the property conveyed, as husband and trustee for his wife, entitling him to the rents and profits so long as he continues in that relation, freed from liability for his debts; and hence, on an attack of the conveyance for actual fraud by a subsequent creditor, it is a material fact, tending to show a covinous intent on the part of the husband in the execution of the conveyance.

11. *Same; failure to record as evidence of fraud.*—While the omission to have such conveyance recorded for six months after its execution, the husband remaining in possession, claiming ownership of the property, and vouching the ownership as entitling him to credit, and upon the

[Seals v. Robinson & Co.]

faith of it obtaining credit, is but a fact or circumstance indicative of fraud, and is open to explanation, which, if just and reasonable, would neutralize all unfavorable influences that might be drawn from it, yet, ignorance, on the part of the wife, of the necessity for registration, is ignorance of the law, which can not be accepted as explanatory of the omission, especially when she knew that her husband, after the execution of the conveyance, and before its registration, embarked in a new mercantile enterprise, contracting debts to a large amount.

12. *Same; badges of fraud; when will authorize impeachment by subsequent creditor.*—The omission to register such conveyance, the want of notoriety of its existence, the magnitude of the property conveyed, when compared with the value of that which was retained, the attempted reservation of a specific benefit to the donor,. which he could hold free from liability for debts, his engagement in business very soon after the execution of the conveyance, obtaining a false credit because of his possession, and of representations of ownership of the property conveyed, to which the donee by her supineness, at least, contributed, are all badges of fraud, indicative that the donor's intent was the hinderance, delay and fraud of creditors, which will authorize a subsequent creditor of the grantor to successfully attack the conveyance, whether the fraudulent intent was directed against existing or subsequent creditors.

Appeal from Pike Chancery Court.

Heard before Hon. John A. Foster.

This was a bill in equity by J. M. Robinson & Co., a mercantile partnership, carrying on business in Louisville, Kentucky, simple contract creditors of S. J. Seals, against the said Seals, R. C. Seals, his wife, and W. A. Weldon, seeking to have vacated and set aside, as fraudulent and void, a deed executed by S. J Seals to his wife, bearing date 17th June, 1881, and conveying to her several lots of land, situate in the city of Troy, in this State; and to have the property conveyed by the deed sold for the payment of complainants' demand; and it was filed on 20th February, 1882. As appears from the averments of the bill, and from the proof, the complainants sold S. J. Seals, on 29th and 30th days of September, 1881, goods, wares and merchandise, amounting in price to nearly one thousand dollars, on credit, and without security, the debt maturing at two and four months; on which was paid, on 24th November, 1881, the sum of two hundred dollars. The bill alleges : " That at the time said purchases were made, the said S. J. Seals held and owned in his own name and right a large amount of real estate and personal property, of great value, to-wit, eight or ten thousand dollars, consisting of valuable brick storehouses in the city of Troy, and dwellings and lots in said city, and stock in trade and choses in action, as represented by him, of the value of four thousand dollars; and that upon the faith of said real and personal property, so owned by him and held and standing in the name of said S. J. Seals, in his own right as aforesaid, your orators were induced to sell and credit and trust said S. J. Seals, and sell and deliver to him goods, wares and

merchandise upon the credit aforesaid. Orators further aver that, at the time the said S. J. Seals made the purchases aforesaid, he had himself reported in commercial circles as being worth, over and above all liabilities, in his own right, twelve thousand dollars; and through these representations, and his property aforesaid, he was enabled to obtain credit and to be trusted." It is then averred that on 9th January, 1882, the said S. J. Seals filed in the office of the judge of probate of said county, for record, the deed in question, which is made an exhibit to the bill. The consideration expressed in the deed is the natural love and affection which the grantor had and bore towards his wife, the grantee, and the property is conveyed to her in fee simple, to have and to hold "as her separate property under the statutes of the State governing the estates of married women." After averring the execution by S. J. Seals, on 17th February, 1882, of an assignment of all his property, then owned by him, to W. A. Weldon, his father-in-law, as assignee or trustee for the benefit of his creditors, the bill proceeds: "Your orators further represent to your Honor, and aver the fact so to be, that the said deed made by said Seals to his said wife, R. C. Seals, was not executed on the 17th day of June, 1881, but was executed some time after that date, to-wit, about the 9th day of January, 1882. But orators aver that if they are mistaken in this, then they aver that said deed was not delivered on said day, and was never in fact delivered until the 9th day of January, 1882, when the same became, for the first time, a matter of record."

It is also averred that said deed was without valuable consideration; that at the time of its execution, the said S. J. Seals was financially embarrassed and in failing circumstances, which was known to his wife; that it was executed and delivered by him with the intention, and for the purpose of hindering, delaying and defrauding the complainants and his other creditors; and that such fraudulent intention and purpose were known to his wife, and the deed was accepted by her in furtherance thereof. The bill then contains this averment: "And plaintiffs aver that if said deed [was executed and delivered] at the time it purports to have been executed and delivered, there was a secret understanding and agreement between the said Seals and his wife, that the same should not become a matter of record at said time; and so far as the existence of the said deed was concerned, the whole commercial world was kept in blissful ignorance thereof, until the said Seals had purchased all the goods he wanted, amounting to several thousand dollars [in value], and had disposed of the same; and then, for the first time, it came to light, after the same had been concealed from your orators, and all persons, for the period of nearly seven

whole months; and all this time the said Seals, his wife consenting thereto, was holding himself out to the world as the owner, in his own right, of said property, for the purpose of defrauding his creditors, and those with whom he might afterwards deal on credit and trust." It is also charged that the deed is fraudulent, as to prior and subsequent creditors, in that said Seals "had a reservation therein in favor of himself, being the trustee of his said wife, to control and enjoy the rents of said property, without accounting to any one for the same." The bill was subsequently amended, averring the death of S. J. Seals after the filing of the original bill, and making his administrator a party defendant.

To the bill as amended Mrs. Seals and W. A Weldon filed a demurrer, the character of which is stated in the opinion. The demurrer was overruled, and the defendants answered. Mrs. Seals, in her answer, which was not under oath, averred, and testimony introduced on her behalf tended to show, that the deed in question was executed and delivered at or about the time it bore date, for the *bona fide* purpose, on the part of herself and husband, of making a provision for her and three children, minors of tender years, her husband being induced thereto by bad health, and an apprehension of an early death from a chronic disease with which he was then afflicted, and also a desire to avoid an administration upon his estate ; and that she did not have the deed recorded at an earlier date, because she was not advised of the necessity of registration, and was finally induced to have it recorded by a suggestion from a third party, that the record would be proof of its contents in the event of a loss. She admitted that her husband owed debts at the time of the execution of the deed, but denied that he was then financially embarrassed, and also the averments of the bill charging fraud.

The material facts and circumstances disclosed by the evidence for the complainants, on which they relied to sustain the averments of fraud contained in the bill, are sufficiently indicated in the opinion. There was no direct or positive evidence introduced by them, that the wife had any knowledge of the husband's financially embarrassed condition when the deed was executed, or of his intention to hinder, delay and defraud his creditors, or of any other fraudulent intention or purpose on his part ; or that she combined and conspired with him for the purpose of perpetrating any fraud ; or that she withheld the deed from record for any fraudulent purpose.

On the hearing, had on pleadings and proof, and on a motion to dismiss the bill for want of equity, the chancellor caused a decree to be entered, overruling the motion, declaring the deed fraudulent and void, and granting relief to the complain-

ants. The decree also overrules " the exceptions to. the testimony ;" but the record fails to disclose these exceptions, or their nature or extent.

The rulings of the court, in overruling the demurrer, the motion to dismiss, and the exceptions to testimony, and in granting relief to the complainants, are here assigned as error.

M. N. CARLISLE, for appellants.

N. W. GRIFFIN, contra.

BRICKELL, C. J.—The rules of pleading in a court of equity, as to matters of form, are not so strict as the rules originally prevailing in courts of common law. The statutory requirement in reference to bills in equity is, that they " must contain a clear and orderly statement of the facts on which the suit is founded, without prolixity or repetition, and conclude with a prayer for the appropriate relief." A bill conforming to this requirement, under the practice and the decisions of this court, would have been deemed unobjectionable before the enactment of the statute. The statute has not, however, been construed as in derogation of the *cardinal rule*, as it has been frequently termed, that the bill must show with accuracy and clearness all matters essential to the complainant's right to relief. These matters must not be made to depend upon inference, nor will ambiguous averments of them be accepted as sufficient. The averments must be direct and positive, not uncertain and inconclusive.—*Spence v. Duren*, 3 Ala. 251 ; *Cockrell v. Gurley*, 26 Ala. 405 ; *Duckworth v. Duckworth*, 35 Ala. 70. A bill may be framed in a double aspect; alternative averments may be introduced ; but each alternative must present a case entitling the complainant to the same relief. The bill is demurrable, if in either alternative the complainant is not entitled to any relief, or is entitled to relief essentially differing in character.—*Andrews v. McCoy*, 8 Ala. 920 ; *Lucas v. Oliver*, 34 Ala. 626 ; *Rives v. Walthall*, 38 Ala. 329 ; *David v. Shepard*, 40 Ala. 587 ; *Micou v. Ashurst*, 55 Ala. 607.

If the original bill contains alternative averments, and either averment is insufficient to support the right of the complainant to the relief prayed, the objection was not presented in the chancery court by demurrer. Advantage of it was claimed only by motion to dismiss for want of equity. A motion to dismiss for want of equity is not the equivalent of a demurrer; nor is it appropriate to reach mere defects or insufficiences of pleading curable by amendment, which is matter of right at any time before final decree. It should be entertained only when, admitting the facts apparent on the face

[Seals v. Robinson & Co.]

of the bill, whether well or illy pleaded, the complainant is without right to equitable relief. When it is apparent, if the facts were well pleaded, a case for relief would exist, the defendant should be put to a demurrer, specifying the grounds of objection, affording the complainant the opportunity of removing them by amendment.—*Hooper v. S. & M. R. R. Co.*, 69 Ala. 529. The demurrer interposed was general; it fails, in the words of the statute, " to set forth the grounds," and the the statute prohibits the hearing of it.—*Hart v. Clark*, 54 Ala. 490.

Objections to the admissibility of evidence, in chancery, ought to be reduced to writing, and a reference to them should be incorporated in the note of submission, or they should be otherwise called directly to the attention of the chancellor. If the fact that they have been made is not noted in the submission, or it is not otherwise shown that they were called to the attention of the chancellor, and he does not notice them, on appeal, the presumption is that they were waived.

It is settled by a long line of decisions in this court, that a voluntary conveyance, a conveyance not resting upon a valuable consideration, is void *per se*, without any regard to the intention of the parties, however free from covin or guile they may have been, as to the existing creditors of the donor, without regard to his circumstances, or the amount of his indebtedness, or of the kind, value or extent of the property conveyed, if it be not exempt from liability for the payment of debts. As to subsequent creditors, if it be not shown that there was *mala fides*, or fraud in fact in the transaction, the conveyance is valid and operative. But if actual fraud is shown, it is not of importance whether it was directed against existing or subsequent creditors; either can successfully impeach and defeat the conveyance, so far as it breaks in upon the right to satisfaction of their debts. The distinction between existing and subsequent creditors is, that, as to the former, the conveyance is void *per se*, for the want of a valuable consideration; as to the latter, because it is infected with actual fraud.—*Miller v. Thompson*, 3 Port. 196; *Cato v. Easley*, 2 Stew. 214; *Moore v. Spence*, 6 Ala. 506; *Costillo v. Thompson*, 9 Ala. 937; *Thomas v. DeGraffenreid*, 17 Ala. 602; *Foote v. Cobb*, 18 Ala. 585; *Stokes v. Jones, Ib.* 734; s. c. 21 Ala. 731; *Gannard v. Eslava*, 20 Ala. 732; *Randall v. Lang*, 23 Ala. 751; *Stiles v. Lightfoot*, 26 Ala. 443; *Huggins v. Perrine*, 30 Ala. 396; *Cole v. Varner*, 31 Ala. 244; *Pinkston v. McLemore, Ib.* 308; *Williams v. Avery*, 38 Ala. 115. The right of the subsequent creditor depends upon the existence of actual fraud in the transaction; the burden of proving it rests upon him.—Bump on Fraud. Con. 308. The general rule applies, that fraud must be

24

proved; it will not be presumed, if the facts and circumstances shown in evidence may consist with honesty and purity of intention.    But it must not be supposed that fraud must be proved by direct and positive evidence, or that it is incapable of proof by circumstances leading to a rational, well grounded conviction of its existence.    There is no fact which may be the subject of controversy in a judicial proceeding, civil or criminal, that is not the subject of proof by circumstantial, as distinguished from positive or direct evidence.    As the fraud vitiating a transaction at the instance of creditors lies in the intention of the parties to it, vicious intent is not generally susceptible of proof otherwise than by evidence of circumstances indicative of it. The intention is a mental emotion, of which the external signs are the acts and declarations of the parties, taken in connection with the concomitant circumstances.—*Hubbard v. Allen*, 59 Ala. 283; *Harrell v. Mitchell*, 61 Ala. 270; *Thames v. Rembert*, 63 Ala. 561; *Pickett v. Pipkin*, 64 Ala. 520.

The conveyance now assailed by subsequent creditors of the grantor is of real estate, is purely voluntary, founded upon no other consideration than love and affection, and the controlling purpose of its execution was a provision for the wife of the donor.    It is made directly to the wife, without the interposition of a trustee, and at law is a mere nullity.    All contracts and conveyances made between husband and wife directly, at common law, are invalid, for the reason that husband and wife are regarded as but one person, and the legal existence of the wife is merged in that of the husband.—*Gamble v. Gamble*, 11 Ala. 966; *Puryear v. Puryear*, 12 Ala. 13; *Bradford v. Goldsborough*, 15 Ala. 311; *Frierson v. Frierson*, 21 Ala. 549. The statutes creating and defining the separate estates of married women are not in abrogation of this doctrine of the common law; they are not intended to sever the unity of the husband and wife, so far as to confer on them capacity to contract with, or to convey directly to each other.—*Short v. Battle*, 52 Ala. 456; *McMillan v. Peacock*, 57 Ala. 127.    Although this is the recognized doctrine of the common law, a court of equity, when the contract or conveyance is fair and just, will give to it full effect and validity.— *Williams v. Maull*, 20 Ala. 721; *Williams v. Avery*, 38 Ala. 115; *Mc Williams v. Ramsey*, 23 Ala. 813; *Andrews v. Andrews*, 28 Ala. 432; *Spencer v. Godwin*, 30 Ala. 355.    As a gift or conveyance by the husband to the wife directly is invalid at law, and is valid only in a court of equity, it is regarded as creating in the wife an equitable separate estate, though it may not contain words denoting that it is for her sole and separate use, or words in exclusion of the marital rights of the husband; and that the estate is not consequently within the influence or operation of the statutes

[Seals v. Robinson & Co.]

enabling the wife to take and hold the property owned by her at the time of the marriage, or to which she may become entitled subsequently.—*McMillan v. Peacock, supra; Ratcliffe v. Dougherty*, 24 Miss. 181; *Warren v. Brown*, 25 Miss. 66; *Short v. Battle, supra*.

The conveyance is of all the visible, tangible property of the donor, subject to execution at law. All that he retained, consisted of choses in action, of uncertain, doubtful value. It is said by Judge Story that, "if a husband should by deed grant all his estate or property to his wife, the deed would be held inoperative in equity, as it would be in law; for it could, in no just sense, be deemed a reasonable provision for her (which is all that courts of equity hold the wife entitled to); and, in giving her the whole, he would surrender all his own interests." 2 Story's Eq. § 1374. In *Coates v. Gerlach*, 44 Penn. St. 46, the court said : "A conveyance that denudes a husband of all, or the greater part of his property, is much more than a reasonable provision for a wife ; for in considering what is, and what is not a reasonable provision, the circumstances of the husband are to be regarded, his probable necessities as well as his debts. Equity will not assist a wife to impoverish her husband." Whether a court of equity would refuse to enforce this conveyance upon the ground that the provision for the wife is unreasonable, and that giving to it effect would work injustice to the husband, it is not necessary to consider. The circumstances of each case must be considered as determining the reasonableness of a provision for wife or children, and a conveyance may be valid *inter partes*, which the court would not hesitate to pronounce fraudulent as to creditors.—*Jones v. Obenchain*, 10 Gratt. 259 ; 1 Bish. on Mar. Women, § 755. When the rights of creditors are involved, the extent and value of the property conveyed, its kind and character, are all facts to be considered in determining whether the transaction is infected with a covinous intent. The fact that a donor strips himself of all visible, tangible property which is subject to execution at law, retaining only choses in action of uncertain, doubtful value, may not be conclusive proof of fraud ; taken alone it may be weak and inconclusive ; but it will awaken suspicion and add strength to other circumstances which may in themselves be also insufficient to prove that his intent was fraudulent. And it is his intent, not the intent of the donee, which is material ; the fraud of the donor is visited upon the donee, though he may be *doli incapax*, or though his intentions may be fair and honest, for he comes in as a volunteer, and has no equity which will protect him against the rights of creditors.—*Pickett v. Pipkin*, 64 Ala. 520.

The conveyance is not only of all visible property of the

donor subject to execution at law, the value of which far exceeds the highest estimate of the value of the choses in action he retained, but it contains the unusual, if not remarkable provision, that the donee shall hold the property conveyed "as her separate property under the statutes of the State governing the estates of married women." The effect which would be given this clause of the conveyance, or whether it is capable of being construed as limiting and qualifying the estate, narrowing its incidents, lessening the dominion of the donee, as the estate is created by the general words which precede it, is not now of importance. Whether it is, or is not valid and qualifying as a limitation, subjecting the estate and the wife's dominion to the properties of a statutory estate, which is, in but a limited sense, a separate estate, it is indicative of the intention of the donor; and that intention is, in one aspect, now of the highest importance. Subjecting the estate to the statute would vest it in the donor as husband and trustee for the donee, entitling him to its rents and profits, so long as he continues in that relation, freed from liability to account to the donee, and exempt from liability for his debts. In other words, he does not part with the property absolutely, but reserves to himself a specific benefit which it is to yield, though the ownership is vested in the donee.

Another circumstance it is of importance to consider. More than six months passed after the execution of the conveyance before its registration. Whatever may have been the general circumstances of the donor at the time of the execution of the conveyance, and upon this point the evidence is not so clear and satisfactory as it could probably have been made, the fact is, that when the conveyance was delivered to the judge of probate for registration, he was insolvent, and, in but little more than a month thereafter, made a general assignment for the benefit of creditors. During the interval between the execution and registration of the conveyance, he continued in possession, claiming ownership of the property, vouching the ownership as entitling him to credit, and upon the faith of it obtained credit. The omission to register the conveyance is but a fact or circumstance indicative of fraud, and is open to explanation, which, if just and reasonable, would neutralize all unfavorable inferences that may be drawn from it. The only explanation now offered is, that the donee was ignorant of the necessity for registration; ignorant that the law required registration to protect her from the claims of subsequent purchasers from the husband, or from the claims of judgment creditors. This is ignorance of law, which can not be accepted as explanatory of the omission. But she was not ignorant that the husband, after the execution of the conveyance, and before

[Clark, Adm'r, v. Head, Adm'r ad litem.]

its registration, embarked in a new mercantile enterprise, contracting debts to a large amount. Nor is ignorance of the necessity of registration, or of the duty of giving publicity to the fact that he was not the owner of the property, imputed to him. The evidence is conclusive that he concealed the fact of the conveyance, and represented himself as having title.

The omission to register the conveyance, the want of notoriety of its existence, the magnitude of the property conveyed, when compared with the value of that which was retained, the attempted reservation of a specific benefit to the donor, which he could hold free from liability for debts, his engagement in business very soon after the execution of the conveyance, obtaining a false credit because of his possession and representations that he was the owner of the property, to which, to say the least, the donee by her supineness contributed, are all badges of fraud, or circumstances indicative that the intent of the donor was the hinderance, delay, and fraud of creditors. Bump on Fraud. Con. 308. It is not of importance, whether the intent was directed against present or subsequent creditors; in either event, the conveyance may be successfully impeached by a subsequent creditor. We concur in the conclusion of the chancellor, that the conveyance must be deemed fraudulent as to creditors, prior or subsequent, and the decree is of consequence affirmed.