Warren *v.* Brown et al.

MARTHA L. WARREN *vs.* THOMAS W. BROWN et al.

An acknowledgment of a deed or other instrument by a *feme covert*, must, according to the statute, be made not only "separate and apart from her husband," but privately, and the certificate must state that it was made on "a private examination."

It has long been a principle of courts of equity, that purchases made by the husband in the name of the wife, during coverture, will be treated as advancements made to her.

The statute of 1839, in relation to the rights of "married women," is an enabling, not a restraining statute, and intended to extend, not limit, the powers of married women to hold separate property. *Ratcliffe* v. *Dougherty*, 2 Cushman, 181, cited, confirmed, and explained.

The conveyance to Mrs. W. does not fall within the proviso of the first section of the act of 1839, to secure the rights of married women.

The husband can still make purchases of property in the name of the wife, and it will be treated as an advancement to her separate use, provided they are made *bonâ fide*, and not voluntarily.

In all cases arising since the act of 1839, where such conveyances are made voluntarily to the wife, they may be set aside at the instance of creditors, and such could have been done before the passage of that act.

ON appeal from the northern district chancery court at Columbus; Hon. Henry Dickinson, vice-chancellor.

This was a suit instituted in the vice-chancery court at Columbus. The bill charges, that complainant was the lessee of a certain town lot in Columbus; that her deceased husband, in his lifetime, executed to defendant, Brown, two promissory notes, dated 15th December, 1848, and due 1st March, 1849, one for $800, and the other for $60, and "at large usurious

interest, as complainant was informed;" that her husband, to secure the payment of said notes, executed a trust deed to defendant, Eggleston as trustee; that her husband frequently applied to her to execute said deed with him, which she constantly refused to do; and that he threatened to compel her to execute and acknowledge the same, and threatened to consume the house on said premises if she refused; and that finally, by duress, and from fear and compulsion, she signed said deed, but never acknowledged the same as her voluntary act and deed, but did so under duress; that Brown, before she signed the deed, was informed of her refusal and unwillingness to do so, and of the circumstances under which she signed the deed.

Prayer for a perpetual injunction; that the deed be declared void, and that Brown discover at what rate of interest the money was lent, general relief, &c. Injunction granted.

The deed is signed by Martha L. Warren, C. D. Warren, E. C. Eggleston, and Thomas W. Brown, 15th December, 1848; and on the 18th December, 1848, was duly acknowledged by all the parties, before the clerk of the probate court, (Daniel Williams,) who certifies to the separate and private examination of complainant, and that she acknowledged that she signed, sealed, and delivered said deed of her own free will, and without any fear, threats, or compulsion of her husband. The deed was recorded.

The answers set up, that the property was leased to Joseph Bryan, who transferred the same to the husband of complainant, who went into possession; that on the 14th of August, 1847, he requested a lease to be made to his wife, which was done at his instance and request; Warren threatened to burn the house and shoot himself if Mrs. W. did sign the deed, which she did through the persuasion of friends.

It is admitted that Warren executed the notes; that the note for $800 was for that amount of money lent, and that the $60 note was for interest; and the defendants, in answering, reserve the same benefit as if they had demurred to such part of the bill as attempts to set up usury, by complainant.

The defendants deny all knowledge of the alleged fear, compulsion, and duress, and say they do not believe the allega-

tions; and that they are informed, and believe, that the deed was signed by complainant at the home of her mother and step-father, and in the presence of her brother-in-law, and that her brother-in-law, and step-father, are the subscribing witnesses. Defendants further answer, that they are informed by Williams, the clerk, that the facts stated in his official certificate are true. The answers also set up, that the certificate of the clerk is conclusive.

*Crusoe*, for appellant.

The statute (Hutch. Code, 498, § 7) declares that a *feme covert* shall convey her slaves and real estate by deed, in conjunction with her husband, upon privy examination in the mode prescribed by law for married women, conveying their real estate.   The question then arises, whether the above statute of 1846, or the woman's law, applies to the separate estate of a *feme covert*, being leasehold estate or chattel real; the statute is emphatic that she can only convey slaves and land.   If the legislature intended the conveyance to apply to any other species of property, it is passing strange that they did not use the most obvious and comprehensive terms, and declare that she might, in the manner prescribed, convey all her separate real and personal estate.   Land and slaves have a specific, limited meaning.   It would be as legitimate to say, that if a statute were to authorize a *feme covert* to convey her pin money, therefore, under that statute, she would be authorized to convey her land and slaves.   The policy of the law was to protect the rights of married women, and should be construed strictly in their favor, to consummate this object. We contend, then, that if chattel real is not included in the statute, the trust deed by complainant is void, for, independent of the statute, she could only convey property held as separate by the mode expressed in the instrument by which she held the estate.   A married woman cannot part with her separate estate, in any other mode, than in that which is pointed out in the deed of. settlement.   *Montgomery* v. *Agricultural Bank*, 10 S. & M. 567.   Now, apply the principle by analogy to the case where a woman holds a separate estate, under statute,

and it prescribes the mode by which that estate shall be alienated; is not the statute the chart, and can she any more dispose of it except as directed, than she could if she held by deed? If the statute makes no provision, and there is no deed of settlement for this leasehold property, then the trust deed must be governed by the principles of the common law. Now, by the common law, her land could only be conveyed by some judicial proceeding of record. Co. Lit. 326; Clancy, 163. To prevent the personal property vesting in the husband, a deed of settlement must have been executed; if the deed prescribed the mode of alienation, then that mode must be pursued; if no mode was provided, upon her death, during coverture, it vested in her legal representatives; she could not, at common law, divest herself of her personal estate, except as the deed directed. It required the positive provisions of the statute, and these must be pursued to divest her of rights secured at common law. 2 J. J. Marsh. 361, 362.

It is in proof, that complainant, in the court below, acknowledged, &c., the deed in trust, upon privy examination, &c., under duress of limb and life by her husband, and also under a threat to burn the house of plaintiff on the premises, if she refused to acknowledge the deed.

This duress of property, by the modern authorities, is alone sufficient to avoid the deed. Chitty on Cont. 208, (6th edit.); 6 S. & M. 22.

The deed is void, let the duress emanate from whom it may. But it may be contended that plaintiff is estopped by the certificate of the clerk. This may be the case in England, where the acknowledgment is by fine and recovery, or in some of the States, where the act is done in open court, and becomes matter of record, as in Tennessee. Acknowledgment before the clerk is sufficient, provided the grantor labors under no disability. The clerk, say the court in 2 J. J. Marsh. 361, is not vested with the authority to inquire into and adjudicate disabilities; nor does he possess any judicial power; the certificate is not conclusive, it is an *ex parte* ministerial act. In 4 John. R. 162, the court decide that the acknowledgment of a deed is not conclusive; it is *ex parte*, and the person to be affected by

the deed ought at any time to be allowed to question its validity.   So in 1 B. Mon. R. 77, the court hold the same principles applicable where the acknowledgment has been made by *feme covert.* 1 Story, Eq. § 239.   It is held, that where one does an act, when he is under duress, or the influence of extreme terror, or of threats, or of apprehensions, even short of duress, the court will protect them, for in cases of this sort he has no free will, but stands *in vinculis.*   2 J. J. Marsh. 377.

But again, it will be contended that Brown, the defendant, had no notice, and cannot therefore be affected, even by duress. In *Inhabitants of Worcester* v. *Eaton,* 13 Mass. R. 376, it was contended, that duress did not affect a *bonâ fide* purchaser, innocent of the force employed.   The court say, "we know not how to limit the right of one who is deprived of his estate by violence from reclaiming it, into whose hands soever it may come;" the difficulty is as great when one holds under a deed acknowledged by an infant. 2 J. J. Marsh. 361; 3 Wend. 578; *Wheeler* v. *Wheeler,* in which is cited the opinion of Lord Eldon, in 14 Vesey, 289, who says: "I should regret that any doubt could be entertained, whether it is not competent for a court of equity to take away from third persons the benefits which they have derived from the fraud, imposition, or undue influence of others."   2 Vesey, 627.

The trust deed was executed to receive a sum of money loaned to the husband of plaintiff, for more than legal interest; there was no consideration moving between this plaintiff and defendant, and on this ground the deed is void.   The statute makes no provision for *feme covert* executing a trust deed or mortgage; and supposing that the court should be of opinion, that the proof does not establish a case of duress, yet if there was no consideration moving to the wife, or if any undue influence was exercised over her by her husband, the deed would be set aside.   Freeman, Ch. R. 348.

Again, it is contended by defendant, that the title to the leasehold property was in C. D. Warren, the husband.   This is untrue.   See Record, 4, deed from trustees of Mrs. Warren, on 14th August, 1847.   They had a right to execute this deed

either by private lease or public. See Acts of 1827, 137. Mrs. Warren had previously purchased this property from Joseph Bryan. See Warren's petition, (Record,) 31. The deed was made to her on his petition and application. Even if the title had been previously in him, he had a right to surrender to any one who would undertake to pay rent. 11 Mass. 488, 494; 4 Dana, 129. No one had a right to assert that the premises were not legally surrendered, except an existing creditor, if this conveyance were even regarded as a voluntary conveyance on the part of her husband; nor could this conveyance, even regarding it as voluntary on the part of the husband, be fraudulent as against defendant; his debt accrued near two years after the conveyance; the deed was duly recorded. At the date of the deed her husband was solvent; defendant's debt must have existed at the date of the deed, in order to enable him to impeach it, even for fraud. 10 S. & M. 556; 2 Hill's Ch. R. 617.

*George L. Potter*, on the same side.

*James T. Harrison*, for appellees.

If the certificate of the proper officer, on a conveyance of real estate, of the acknowledgment of a *feme covert*, shows that she acknowledged before him that she had voluntarily executed the conveyance, it estops her from saying, that she had not freely and absolutely executed the conveyance. *M'Neely* v. *Rucker*, 6 Black. R. 391, 475; Story on Contracts, 62, § 97; *Bissett* v. *Bissett*, 1 Harris & M'Henry, 211; *Harrel* v. *Elliot*, 2 Hayw. 68; *Scanlas* v. *Turner*, 1 Bailey, (S. C.) 425, 426; 1 Greenl. Ev. 102, § 86; *Campbell* v. *Taul*, 3 Yerg. 548; *Colcord* v. *Swan*, 7 Mass. R. 291; Hutch. Dig. 498, 608, § 19.

Parol evidence was inadmissible to contradict the certificate. *Jourdan* v. *Jourdan*, 9 Serg. & Rawle, 268; *Elliot* v. *Piersall*, 1 Peters, 328; *Jamison* v. *Jamison*, 3 Whart. 457; *Hayden* v. *Wescott*, 11 Conn. R. 131; *Stanton* v. *Button*, 2 Conn. R. 527; *Westbrook* v. *Harbeson*, 2 M'Cord, Ch. R. 117; 12 Peters, 375; 4 Pick. R. 518, 520.

The testimony did not sustain the allegations of the bill. The bill was properly dismissed.

The complainant signed the deed in the presence of her mother, of her step-father, and of her brother-in-law. The two last were the subscribing witnesses to the deed.

The complainant confessed to the magistrate, that she signed the deed voluntarily, &c.; he is not produced in this anxious inquiry after truth. We produce the certificate in due form of law. It is the best and highest evidence on the subject. There is no dispute as to what the complainant stated to the officer upon a private and separate examination. Whilst under the protection of the law, the complainant solemnly stated what she now says was false. Her mouth is closed upon that subject.

The argument made upon the statute, in relation to the rights of married women, (the act of 1839,) is a novel one, at least, and deserves the credit of originality. It is unfortunate, however, for the argument, that it has no application to the case before the court, for the very simple and obvious reason, that the deed in question was executed, acknowledged, and recorded, precisely in the mode pointed out by the statute, and agreeably to the laws in force for the conveyance of property by *femes covert.* If the deed does not come under the "woman's law," it is good outside of it. The general rule, at common law, is, that a *feme covert*, having a separate estate, acts with regard to it as a *feme sole;* and if the act of 1839 or 1846, only provides how a married woman shall sell her slaves and real estate, and the property in question is a chattel real, and not real estate, as contended, so much the better for us. At common law, the fact that a married woman contracted a debt during coverture, either as a principal, or as a surety for her husband, or jointly with him, would be held *primâ facie* evidence, to charge her separate estate without any proof of a positive agreement or intention to do so. *Berry* v. *Bland*, 7 S. & M. 77; *Frost* v. *Doyle*, Ib. 68. The wife holds the property either at common law or under the statute, and the deed in this case is good under either.

Besides, the assignment of a lease for a term of years is not "a sale," and this is a complete answer to the objection. A lease is a mere contract for the possession and profits of land upon the payment of rent. But the whole statute is to be taken together, and it will not bear the rigid construction attempted to be placed upon it. *Sessions & wife* v. *Bacon et al.* 23 Miss. R. 272; *Boarman* v. *Groves & wife*, Ib. 280.

This property was really the husband's. See statute of 1839, Hutch. Code, 497, § 1. " Provided the same does not come from the husband after coverture." The title was merely shifted. See testimony. *Hopkins* v. *Carey & wife*, Nov. Term, 1851, Opinion Book, 91, 1 Cushm. 54.

The little matter about a small excess of interest, called usury, has been abandoned.

The statutes against usury are intended for the benefit of the borrower; they confer a personal privilege on him, which he may waive, and if he does, no one else can take advantage of them. *Cook & Romegay* v. *Dyer*, 3 Ala. R. 643. And there was no tender or offer to pay any part.

Mr. Justice YERGER delivered the opinion of the court.

The complainant filed a bill to enjoin the sale of some town lots in the town of Columbus, to which she had a lease for ninety-nine years, renewable for ever; and which by deed, jointly with her deceased husband, she conveyed to the defendant, Eggleston, in trust to secure a debt due by her husband to the defendant, Brown. The ground of relief chiefly relied upon is, that the deed was executed under threats and duress and without her voluntary consent. The proof of the threats and duress seems ample, but it is not shown that either Brown or Eggleston was aware that they had been used. It is insisted, that in the absence of such knowledge upon their part, the acknowledgment made by complainant before the magistrate, estops her from denying the validity of the deed.

The title of complainant to the premises was derived from trustees of the Franklin Academy, by a lease made to her during coverture, on the 14th of August, 1847. But defendants allege, that the consideration was paid by the husband, and

that complainant cannot, therefore, hold the property in her own name; but that the same belonged to the husband, and is subject to his debts.

The acknowledgment made by the complainant is not in accordance with the statute, but is defective in an essential particular. It is true that it states, that it was made " separate and apart from the husband; " but it does not purport to have been made on " a private examination."

This is as essential a requisition of the statute as an examination " apart from the husband." For it will be readily seen, that the objects of the statute might be as easily defeated, if the examination was not made in private, as if made in the presence of the husband.

This view of the case renders it unnecessary to decide, whether a *feme covert* would be estopped by an acknowledgment made in due form from showing threats or duress.

This brings us to the consideration of the second question. Had the complainant a separate estate in the premises by virtue of the lease to her?

As the wife cannot be a trustee for the husband, it has long been a principle of courts of equity, that purchases made by him in her name during coverture would be treated as advancements made to her. In this case, it appears from the petition of C. D. Warren, the husband, made on the 13th of August, 1847, to the trustees of the Franklin Academy, that Mrs. Warren, his wife, became " the owner, by purchase from Joseph Bryan," of the lots in controversy; and the petition contained a prayer, that a deed for them might issue in her name, which was accordingly done. One of the witnesses proves, that the husband, at the same time, paid the balance due from Joseph Bryan on the original lease of the lots. It is said, the money he thus used was his own, and not Mrs. Warren's. Of this there is no direct proof; but if it be conceded, the case falls within the principle of equity we have just stated, and must be considered as an advance to the wife for her separate use.

But it is said, that if the money was advanced by the husband, the wife cannot hold the property in her own name,

because of the proviso of the first section of the act of 1839. Hutch. Code, 496.

In the case of *Ratliffe* v. *Dougherty*, 2 Cushm. 181, we stated that the act of 1839 was an enabling, not a restraining statute, and intended to extend, not to limit, the powers of married women to hold separate property; and we there held, that a deed made directly by the husband to the wife, though void at law, would be sustained in equity against him, though not against his creditors. And the rule there laid down, we would apply to this case, had the conveyance been made by the husband to the wife. But here the husband did not make the deed to the wife. The conveyance was made to her by a stranger. The title to the property never was in the husband, and it does not, therefore, fall within the proviso to the first section of the act of 1839, as the "property," in the words of the proviso, "did not come from him."

But it is said, he advanced the money which paid for it. This may be true. Before the act of 1839, a husband could make such purchases in the name of his wife, and they were treated as advances made to her separate use. The power still exists, in our opinion, not impaired by that act; and the only inquiry that can be made under such circumstances, is, whether the advance was made *bonâ fide*. Of course, such advances being merely voluntary, would be set aside, at the instance of creditors, in all cases arising since the act of 1839, in which, under like circumstances, they would have been set aside if the act had not been passed.

The record before us contains no suggestion of fraud, and the debt which the defendants seek to collect, was made subsequent to the lease to Mrs. Warren. Under such circumstances, we think a court of equity will protect her right to the property. The decree of the court below must be reversed, and the cause remanded.