SUNDERLAND et al. v. SUNDERLAND et al.

1. **Trust:** WHEN IT ARISES. When one purchases lands with the money of another, and takes the title to himself, there arises by implication of law, a trust in favor of the owner of the money.

2. —— HUSBAND AND WIFE. When land is purchased by the husband who takes title in the name of the wife, the presumption is strong, if not conclusive, as between them, and as between the wife and the heirs of the husband, that it is intended as an advancement and provision for the wife, and not as a trust in favor of the husband. And the same presumption arises when the husband permits the wife to use his money to make purchases in her own name.

3. —— RESULTING TRUST. A resulting trust may be established by parol evidence, but such evidence must be clear, decisive and satisfactory, or the courts will not disturb the legal title.

4. —— LAPSE OF TIME. Long and unexplained delay is a material circumstance against the establishment of implied trusts in real estate, when parol evidence alone is relied on for this purpose.

*Appeal from Dubuque District Court.*

THURSDAY, JANUARY 4.

RESULTING TRUSTS : PURCHASE OF LAND BY WIFE WITH HUSBAND'S MONEY : EFFECT OF, &C. —— This is a petition in equity by five of the heirs-at-law, one son and four married daughters, of John Sunderland, Sr., deceased, against Elizabeth Sunderland, his widow, and two of the heirs of the said John, claiming that the said Elizabeth holds the legal title to 160 acres of land in trust for the heirs. The material averment of the petition is as follows : "Plaintiffs allege that the said land was entered by the said Elizabeth, then the wife and now the widow of the said John, with money belonging to the said John Sunderland, Sr., deceased, and for his use ; but the title was taken in the name of the said Elizabeth for convenience only, and that the legal title to the same is still in her."

*Prayer*, That the title be decreed to be in the heirs-at-law of John, Sr., and that partition he needs, &c.

Her answer specifically and pointedly denies that she entered the land with her husband's money, or in trust for him ; but avers that she entered it with her separate money and for herself ; that she has ever since had the sole control of it, and that her husband during his lifetime never made any claims whatever to it.

To overcome this answer and sustain their petition, the plaintiffs relied upon the testimony of the said Elizabeth, who was examined as a witness in their behalf. The following is the substance of all her evidence :

"I am the wife of John Sunderland, Sr.; he died October, 1856; the land was entered in my name, and with

my money; I got the money out of the bank; when I was married to Mr. S. I had no property of my own; never had any legacies left to me; I never received any money from any one, except such as I worked for and earned; the last ten years I was in England, my husband followed his trade out of doors and I tended toll and kept store; my husband's name was over the store; I never did business in my own name; we put the money in the bank, and when I came away I drew out of the bank a part, what was my own, and left the rest; I took what I thought I had earned, and left the rest there in the house; my husband was not at home when I drew out the money; he was not at home at the time, but I told him I was going to America; he did not get his business settled up to come, and so I came alone; I think he knew I was going to draw the money; he knew I was coming to America, but did not know the time, or he would not have let me come; he wanted to get his business fixed up first, but if I had waited for him he would never have come; I entered this land with the money I drew out of the bank, and other land also, but the latter has been sold by me and my husband; my husband gave me money at different times, in all, hundreds of pounds; £50 at one time, and sometimes more, and this was not for the use of the house; I and my husband lived together till he died.

*Cross-examination:* "I came here in 1846 or 1847; I went back after the land sale and brought my husband." Against plaintiff's objection and exception, the witness thus continued: "I had several conversations with my husband about the land standing in my name; *my husband said he would never change the land — it should stand as it did now —* I had hard earned it, and it should stand as it was." The witness also added, to which there was no objection, the following; "I kept toll-gate many years; ten years at one place; received from £20 to £25 per year; my husband

was assistant surveyor on the king's highways; part of the time I kept shop; the money I drew out of the bank was what I put there; my husband never called the land in question his; he never claimed to own the land, nor did he claim to own the money."

This was all the evidence of any weight, except that the plaintiffs proved by one Dickinson (the defendants objecting to the competency of the evidence), that shortly after Mrs. S. left England, Mr. Sunderland said to him that "his wife had gone to America, and had been to the bank and drawn out £500 of his money."

Upon the hearing the District Court entered a decree in favor of the defendant Elizabeth, confirmed her title and dismissed the plaintiffs' petition. Plaintiffs appeal.

*Cooley & Eighmey* and *T. C. Roberts* for the plaintiffs.

*Wm. Mills & Son* for the defendant.

DILLON J. — The object of this suit was to establish, respecting the land in question, as against the widow, a

1. TRUST: when it arises.

resulting trust in favor of the heirs of John Sunderland, Sr.

It is a well established principle in equity, that where one purchases lands with the money of another, and takes the title to himself, there arises by implication or operation of law, a trust in favor of the owner of the money. *Sullivan* v. *McLenans*, 2 Iowa, 437; Id., 59; *Claussen* v. *La Franz*, 1 Id., 226; *Olive* v. *Dougherty*, 3 G. Greene, 371; *McGregor* v. *Gardner, ex'r*, 14 Iowa, 326; *Foote* v. *Colvin*, 3 Johns., 216; 2 Washb. Real Prop., 177 and authorities cited.

If the land had been purchased by the husband, and the title taken by him in the name of his wife, the presump-

2. —— husband and wife.

tion would have been a very strong, if not a conclusive one, as between them, and as between

the wife and the heirs of the husband, that it was intended as an *advancement* and *provision* for the wife, and not as a *trust* in favor of the husband. 2 Story Eq. Juris., § 1201 to 1205, where the general doctrine is very clearly stated. See also *Kingdon* v. *Bridges*, 2 Vern., 67; Id., 120; *Ratcliffe* v. *Dougherty*, 24 Miss., 181; 25 Id., 66, 74; *Whitten* v. *Same*, 3 Cush., 191, 200, 1849; *Livingston* v. *Same*, 2 Johns. Ch., 537; *Welton* v. *Divine*, 20 Barb., 9, 1854; 2 Washb. Real Prop., 173, pl. 14, and authorities cited; *Marshall* v. *Pierce*, 12 N. H., 127; *Brown* v. *Doe*, 7 How. (Miss.) 181; Hill. on Trustees, 99 and notes.)

Now it is obvious, that if a husband permits his wife to use his money to make the purchase in her own name, it is the same thing as if he himself had made the purchase, and caused the title to be made to her. *Per* WADLAN, Ch. J., *Douglass* v. *Orice*, 4 Rich. Eq. (S. C.), 322, 1852, and authorities, *supra*.)

3. — evidence. While a resulting trust may be established by parol evidence, such evidence must be clear, decisive and satisfactory, or the courts will not disturb the legal title. *Baker* v. *Vining*, 30 Me., 121, 1849.

4. — lapse of time. Long and unexplained delay is a material circumstance against the establishment of implied trusts in real estate, when parol evidence alone is relied upon for this purpose.

In view of these reasonable and well founded principles, the decision of the District Court was certainly correct. It lies at the foundation of the plaintiff's case, to establish clearly and beyond fair doubts, that the money with which the land was purchased was the husband's, and that the wife used it to enter lands with in her own name, and without his prior authority or subsequent assent. However it might be *at law*, or however it might be as respects the *creditors* of the husband, it is by no means beyond reasonable dispute, that in equity, as between the husband and

wife, the money she took away was not hers. She testifies that it was hers, acquired by gift and by her own earnings; that her husband recognized it as hers; never claimed it as his own, and that it was deposited by her in the bank. It seems reasonable to suppose that she had the sole control of it, for it was drawn out of the bank by her. See, on this subject, *Stanning* v. *Style*, 3 P. Wms., 337, 1734 (leading case); *Wood* v. *Warden*, 20 Ohio, 518, 1851; *Welton* v. *Divine*, 20 Barb., 9, 1854; *Whitten*, v. *Whitten*, 3 Cush., 191, 1849; *Warren* v. *Brown*, 25 Miss., 66; 24 Id., 181; see also *Logan* v. *Hall*, *post.*

What we hold upon this point is, that the plaintiffs have not, under the authorities hereinbefore cited, established, with the requisite certainty and clearness to justify us in divesting the legal title, that the money with which the land in question was entered was, *as between the husband and wife*, equitably the property of the husband. The testimony of Dickinson, as to the husband's declaration in the absence of his wife, is not competent, and if it was, it possesses, when closely examined, but little force.

But if it were assumed that the money was the husband's in such a sense that he could have pursued his wife to America, and have held her as a trustee of this land for him, yet he did not do so, but on the contrary, ratified and adopted her acts. Shortly after the purchase of the land she went back to England, and she and her husband came together to this country, and lived together until his death. Other lands, entered by the wife in her name, were disposed of by the consent and conveyance of both. By the petition it is shown that the husband died seized in his own name of several tracts of land, exclusive of the land in controversy. It does not appear that he ever claimed or called the land in question his. It does appear by the wife's testimony (the only witness for the plaintiffs who delivered competent evidence on the trial), that the hus-

band did recognize the land as his wife's. At the time of her husband's death, she had, for the long space of nine or ten years, held, with his knowledge and consent, the title to and claimed the land as her own. *He* never questioned her right, and under the circumstances we do not think part of his children (who are also hers) should be allowed through him, seven years after his death, and seventeen years after the mother acquired title, to claim that which he did not claim, to unsettle that which he regarded as settled, and to stir up in the family the bitter waters of an unseemly litigation.

Affirmed.