NANCY WILSON et al. *v.* MARY BEAUCHAMP et al.

1. RESULTING TRUST.—If a person buy land in the name of another, and pay the consideration money, the land will be held by the grantee in trust for the benefit of him who advanced the money. The trust attaches to the legal title, whether freehold, copyhold, or leasehold, whether the title be taken in the name of the purchaser and others jointly or in their several names, in favor of the purchaser who advances the money.

2. SAME—PRESUMPTIONS—IMPLICATION.—The trust results from the act, and is a presumption of intention. If the title be taken in the name of a stranger standing in no close relationship of blood to him who advances the money, the trust arises as an implication of law. But where there is a moral duty to provide for the recipient of the legal title, as in case of a son, daughter, or wife, then the advancement of money by the father or husband will be referred to this moral duty, and the presumption that it was a gift by way of advancement, will overcome the presumption in favor of a trust. 2 Story's Eq. Jur., § 1204; 3 Cush. Man., 194.

3. ADVANCEMENT TO WIFE OR CHILD—BURDEN OF PROOF.—The rule that it shall be deemed a provision or advancement in favor of wife or child is not inflexible, but simply shifts the burden of proof, so that if it shall be clearly shown that it was not meant as an advancement, but that the title was vested in the wife or child for other reasons, to be held in trust, for father or husband, then this presumption ceases.

4. Same—Resulting trust—Parol testimony.— The presumption of advancement or provision will stand unless overcome by proof; and parol testimony of the declarations of the father may be received to rebut the presumption of advancement; and this, it is said, on the ground that a resulting trust, not being within the statute of frauds, could be established by parol proof, and therefore the contrary, that it did not exist, was open to the same sort of proof. 11 Johns., 95. Parol evidence is admissible to prove that the money was not paid by the nominal purchaser, although so recited in the deed.

Error from chancery court of Yalobusha county. Hooker, J.

It appears by the pleadings and exhibits, that about the year 1844, Archibald Wilson, ancestor of the complainants of that name, and of some of the defendants, bought and paid for a tract of land in Grenada county, and had the deed executed to his wife Nancy Wilson, one of the defendants ; that at the time, it was agreed verbally, and in writing, signed by said Nancy, as follows :

"State of Mississippi, June 20, 1844.

"this is to shore that my husban, A. Wilson, has bought of John Reid, a track of land of 4 hundred and eighty acres, lighing in Yallowbusha county, neare Granuda, and has the deed made to me, wich i promis to hold in good faith, for his benefit.

[Signed] Nancy Wilson."

Said Archibald Wilson took and held possession from shortly afterwards,.to the day of his death, using, occupying, cultivating, and paying taxes on it, as his own; in all which said Nancy acquiesced. After the death of said Archibald, said Nancy made voluntary gifts and conveyances of the land to certain of the children of her and the said Archibald, to the injury of the others. The bill seeks, on behalf of the excluded heirs, to set aside these conveyances, and to have the said Nancy declare a trustee for her deceased husband, to have the property conveyed to the heirs, and for general relief.

Defendants demurred, because complainants do not claim a resulting trust, or state of facts from which such trust can be implied; because a parol agreement to hold in trust, is void under the statute ; or, if not, cannot be enforced in equity; because the claim is barred by time; because the

facts stated in the bill are consistent with the legal title being in the wife, and the use in the husband by virtue of his marital rights.

The demurrer was overruled, and the case brought to this court by appeal.

The error assigned in the overruling of the demurrer.

*E. S. Fisher*, for appellants.

The relief prayed can only be granted by holding the wife to have been the husband's trustee. The rule appears to be uniform and without exception, that the wife, on account of the peculiar relations growing out of marriage, can never, under any state of case, be the husband's trustee. She is incapable of contracting with him, or binding herself for the performance of any other duties than those belonging to the marital relations. It is true that she can be his agent, but she never binds him in her contracts as such, and while it may be true that if she acts without authority, or transcends her authority, the husband may not be bound, yet she incurs no liability, because the mere agency or departure from the authority as such, cannot have the effect of modifying the law, which declares her inability to contract. If the husband in this case had made her his agent to pay the money to Reed, and to receive in the name of the husband, the deed of conveyance, but instead of so taking it to the husband, had taken it to herself, there is no doubt but the husband would not be bound; and why, because the agency was not observed by Reed, who could still be forced to convey to the husband, on the ground that he, Reed, had not complied with the terms of the contract to convey. The wife, however, would not be held as the husband's trustee, because having no power to contract with him, she could not execute the trust by conveying. Her deed would, no doubt, be ordered to be cancelled on the ground, both of a want of the husband's consent for her to receive it as her deed, and want of power in Reed to make it to her. In a case like the one supposed, arising between third parties, both capable of

contracting a trust, would result or arise in favor of the party entitled to the conveyance, or he could pursue his remedy, if he preferred, as in the case supposed of the wife, by treating the deed taken without authority, invalid, and compelling the party bound to convey, to perform his contract, and it might be to his interest to do so, if the fraudulent vendee was largely indebted, or judgment liens against him, or might bring his action at law for damages, and recover on the ground that the vendor had not only not performed his contract, but had put it out of his power to do so.

But what are the facts in this case? The conveyance was made to the wife by Reed, at the request of the husband, who paid the purchase money. This would not even create a resulting trust between third parties. If A purchase land and pay for it, and take the title in the name of B without his consent, no trust results in such a case, because A could not, without his consent, be dragged into a contract, or forced into a fiduciary relation.

If a father purchase land in the name of his child, no trust results, because it is presumed to be an advancement; 2 Story's Eq., § 1204; " and the presumption is stronger, where a husband purchases land in the name of his wife—no trust is implied or results, because the wife cannot be a trustee for the husband. Ib.

But the case of Warren v. Brown et al., 25 Miss., 66, is decisive of this question. The court in that case say (p. 74): " As the wife cannot be a trustee for the husband, it has long been a principle of courts of equity, that purchases made by him in her name during coverture, would be treated as advancements made to her."

" The wife cannot convey lands to her husband, though she may release her dower (in his lands) to his grantee." 2 Kent, 106. Stevenson v. Osborn, 41 Miss., 110, fell on the point as to the wife having no power to contract. An agreement by a wife for the sale of her real estate, without the assent of her husband, is wholly void, and equity has refused to

enforce it, though for valuable consideration. Lane v. Mc-
Keen, 15 Maine, 304; 1 Parsons on Contracts, 288.

If the wife's deed to the husband be void, her contract to
convey to him would be equally so—otherwise the " very
Irish " of the absurd proposition would be this : The wife's
deed to her husband is void, but her contract to convey to
him is valid, but her conveyance when executed to him ac-
cording to the contract will also be void.

When it is decided that the wife cannot be the husband's
trustee, it is in so many words the same thing as deciding
that she takes the estate absolutely discharged from all
trusts whatever, and the very moment she is invested with
an absolute estate, she can only part with it according to
law, which is plain and simple.

The court will bear in mind that this deed was made on
the 11th day of June, 1844, and according to the bill, Wilson,
the husband, lived until sometime during the year 1867,
making twenty-three years in which he could have sought
relief, if he had been dissatisfied or overreached by his
wife. No fraud can, therefore, be presumed, because lapse of
time would rebut the presumption.

Again, this is nothing more than an ordinary bill for a
specific performance of a contract in regard to land. The
bill when stripped of all useless verbiage, simply means that
Nancy Wilson, the wife, on the 11th day of June, 1844, en-
tered into a parol agreement to hold in trust, and to convey,
whenever requested, a certain tract of land to Archibald
Wilson, her husband, and that on the 20th day of June,
1844, she recognized this parol agreement by reducing it
to writing. This is the whole case presented by the bill, un-
less you hold that there was a resulting or implied trust.
Can such a contract be enforced? Suppose, instead of giv-
ing the writing on the 20th of June, 1844, she had made to
her husband a formal deed conveying to him in fee simple
the land in question, would such deed have been void or
valid? It would most unquestionably have been void. Is
the writing executed on the 20th day of June of more
validity than the deed would have been if executed?

Will a court of equity decree specific performance of a nullity? There may be certain contracts void at law, but valid in equity which a court of equity will, at least, uphold when executed, and will in some cases, enforce. As, for instance, if a husband should convey a reasonable share of his estate to his wife, the deed would be void at law, but not so in equity, and hence it would be upheld. But the difference is this—the husband is not like the wife, restrained in his power of disposing of his property; his power is unlimited in this respect, while that of the wife is limited to the very cases and modes pointed out by the statute, and, consequently, where the statute is not followed, her contract is void both at law and equity.

The wife being under the influence and dominion of her husband, her consent to an agreement made with him, is his consent. She is really not a free agent, and is not so regarded, except in contracts consummated according to the statute. The husband cannot complain, because he was required to know the law, at his peril.

It is, however, said that the husband was in possession of the land from the date of Reed's deed until his death, treated it as his own, and paid taxes, etc., until his death, in 1867. These several acts were all consistent with the wife's title, and the husband's rights under it.

The very fact that his grand-children are complainants in the bill, prove that he had issue born alive, long before the wife acquired her title, and that he was, therefore, entitled to a life estate in the land; and as to paying taxes, he only did what a man enjoying the profits of the land, was bound to do.

*W. R. Barksdale*, for the appellees.

If A buy land with his own money, paying cash, and have the title made to B, a stranger, a trust will result to A, and B will be held a trustee for A, of said lands.

This is an established doctrine—is not now open to controversy. See Story's Eq. Jur., § 1201, and authorities therein cited; 10 Bac. Abr., 199, 200 (ed. 1848), title, "Trusts,"

*c.*; Adam's Eq., 33, note 1. It proceeds on the idea of presumed intention of the purchaser, his own money should be for his own benefit, and not for the benefit of a stranger.

If A buy land with his own money, paying cash therefor, and have the title made to B, who is A's son, no trust will arise by implication of law, to A, and B will not, *prima facie*, be a trustee for A.

This proceeds, just like the first case, on the presumed intention of the purchaser, that B, being his son, from natural and parental affection, he intends it as a benefit for B, in discharge of his moral obligation as a token of affection—an advancement. Story's Eq. Jur., §§ 1202, 1203, 1204, and notes cited; Adam's Eq., 33, 34, and American notes.

In both these cases, it is but a rule of presumptive evidence, against which the law hears proof of the intention of the purchaser, and hears parol proof at that. "As a resulting trust may be created, so it may be rebutted by parol evidence, either by direct contradiction, or in proof of a different intention, as that the nominal purchaser was designed to be the real beneficiary." Botsford v. Burr, 2 Johns. Ch., 405; Page v. Page, 8 N. H., 189; Baker v. Vining, 30 Me., 126; Elliott v. Armstrong, 2 Blackf., 199; McGuire v. McGowen, 4 DeSans, 487; Sewell v. Baxter, 2 Maryl. Ch., 448. Or that the party advancing the purchase money, by the original agreement, expressly stipulated for himself a benefit from the transaction, inconsistent with the creation of a trust. Dow v. Jewell, 1 Foster, 470. And so in general where a different trust has been declared at the time, in writing." Leggett v. Dubois, 5 Paige, 114; Austice v. Brown, 6 Paige, 448; Clark v. Burnham, 2 Story, 1; Mercer v. Stark, 1 S. & M. Ch., 479. "Resulting trusts of this nature arise from the want of any consideration between the nominal purchaser and the person who applies the purchase money. When, therefore, the parties are not strangers, but stand in that relation of blood which supplies by itself, in equity, a good consideration for a conveyance, as in the case of a purchase by a parent in the name of a child, *prima facie*, no

trust results, but the transaction is treated as an advancement. Page v. Page, 8 N. H., 187; Jackson v. Matsdorf, 11 Johns., 91; Partridge v. Havens, 10 Paige, 618; Knouff v. Thompson, 16 Reim. St., 357; Dennison v. Goehring, 7 Ind., 182, note; Taylor v. James, 4 Desaus., 6 ; Tremper v. Barton, 18 Ohio, 418; Stanley v. Breemer, 6 Blackf., 194; Dudley v. Bosworth, 10 Humph., 12.

But this is a mere circumstance, creating an adverse presumption, to rebut which, parol evidence is again admissible. Jackson v. Matsdorf, 11 Johns., 91; Dudley v. Bosworth, 10 Hump., 12; Taylor v. Taylor, 4 Gilm., 303; Tremper v. Barton, 18 Ohio, 418; Adam's Equity, 33, 34, American notes."

4th. "A purchase by a husband, in the name of his wife, is, in like manner, as in case of a purchase in the name of a child in the first instance, taken to be an advancement of the wife, and not a resulting trust. Guthrie v. Garner, 19 Wendell, 414; Whittier et al. v. Whittier, 25 Miss., 194, 195; Walton v. Divine, 20 Barbour 9; Alexander v. Warran, 17 Mo., 228."

" The presumption of an advancement from the grantees being the child or wife of the person who pays the purchase money, may be rebutted by evidence which shows that the intention of the latter was to secure a trust for himself. Jackson v. Matsdorf, 11 Johns., 91, 96; Shepherd v. White, 10 Tex., 72. The question in such cases is one entirely of limitation. Proseus v. McIntyre, 5 Barb., 425, 432; Butler v. M. Insurance Company et al., 14 Ala., 777, 788; and hence, proof, it would seem, will be admissible that a conveyance of land, bought and paid for by a husband, was made to his wife under the mistaken impression that it would vest a title in, or operate for the joint benefit and use of, both of them. 2 Wil., 638; (this last case is same as 27, 29, Ver., or else same as 1 Mass.) see 1 Leading Cases in eq., Hare & Wallace's Notes, case of Dyer v. Dyer, beginning at side-page 165, and at page 257, 3d Amer., from 2d Lon. Ed.; Amer. note, top p. 279. As to the presumption of advancement of a wife being rebutted on a purchase, by a husband

of stock in the joint names of both himself and his wife, see Smith v. Waide, 15 Sim., 56; Hoyes v. Kindersly, 2 Sm. & Gif., 195.

5th. In all these cases the child and wife are put on precisely the same footing as to the purchasers, being father or husband.

And the like presumption exists in the case of a purchase of a husband in the name of his wife, and of securities taken in her name.

Indeed, the presumption is stronger in the case of a wife than of a child, for she cannot, at law, be the trustee of her husband. Story's Eq. Jur., § 1204. Where, therefore, the parties are not strangers, but stand in that relation of blood, which supplies by itself, in equity, a good consideration for a conveyance, as in the case of a purchase by a parent in the name of a child, *prima facie*, no trust results, but the transaction is treated as an advancement. Adams' Eq., side pages 33 and 34, Amer. note. Against this volume of authority and reason, counsel for appellant opposes a case of Warren v. Brown, 25 Miss., 66, which, he says, is conclusive. On this subject the case of Warren v. Brown is no decision at all, but the veriest *dictum*, meagre and unsatisfactory at that not citing a single authority, and on the main point overruled by Lore v. Taylor et al, 26 Miss., 567.

6th. But says counsel, it pretty clearly appears that the trust, if created, is created, as shown by the averments of the original and amended bills of the complainants by a final agreement. There are two answers to this, either of which is conclusive. 1st. An averment of an express agreement by the bill on demurrer, means an agreement in writing. Story's Eq. Pl., § 762, 765, 763, and especially, Cozine v. Graham & Bleeker, 2 Paige, 177. 2d. A parol declaration of a trust was good under our statute of frauds and perjuries up to 1857 (the adoption of the Rev. Code). Anding v. Davis, 38 Miss., 593; 39 Miss., bottom; Loggins v. Heard, 31 Miss., 426.

7th. Much of the brief of the counsel for the appellants

is devoted to the refutation of two propositions not asserted, and not necessary to be asserted by counsel for appellees: 1st. That a husband can make no contract with the wife in law; 2d. That the wife can make no conveyance of her separate estate in lands under our laws, except by a strict compliance with, and pursuance of the mode prescribed by statute. Both of these propositions are admitted by appellees's counsel. It is insisted, however, that a husband may, by acts and facts occurring antecedently to, or contemporaneously with the purchase, or else immediately after it, so as to form, in fact, part of the same transaction, show his intention that the wife (or a son, who we think stands on the same footing) should take the property as charged in her name as a trustee, and not for her own benefit. Grey v. Grey, 2 Swann, 594; Reddington v. Reddington, 3 Ridg., 106, 177, 194; Murless v. Franklin, 1 Swann, 17, 19; Lidmouth v. Lidmouth, 2 Bead., 447; see 1 Lead. Cases in Eq., Hare & Wallaces' notes, Dyer v. Dyer, Side p., 182; top p.p., 270, 271, ed., 1859. This is not alleged by complainants.

The error into which the learned counsel falls, is that the land in question is, or ever was, the separate property of the said Nancy. This assumes the whole matter in issue and assumes it on his part after this demurrer admits the very opposite. The written admission of the declared trust made by Nancy Wilson is good as a rebutter of the presumption of advancement to her. Reweth et al. v. Buckingham, 28 Miss., 92.

*Femes covert,* infants, idiots, lunatics, and other persons who are *non sui juris,* may be trustees. Hill on Trustees, 46–48, 376; Story on Agency, §§ 8, 9.

The learned counsel of the appellants seems to have abandoned the defense of the statute of limitations. In view of the well settled law on this subject, it is not surprising that he should have done so.

As between trustees and *cestui que trusts,* an express trust, constituted by the act of the parties themselves, will not be barred by any length of time, for in such cases there is no

adverse possession, the possession of the trustee being the possession of the *cestui que trust.* Hill on Trustees, side page 164. Admitting that Revised Code, 1857, 403, art. 31, has changed this, which seems not clear, the bar in this case would not be complete, because there was no adverse possession · or holding against the *cestui que trust,* and so the bill and amended bill expressly avers.

In case of implied trust the statute will begin to run only from the time that the possession of the trustee is openly adverse to the *cestui que trust.* Prewett et al. v. Buckingham, 28 Miss., 392; Murdock et al. v. Hughes et al., 7 S. & M., 219.

*E. S. Fisher,* in reply.

It is said by counsel for appellees, that the statute of frauds is abandoned as a ground of defense to the bill. It is true that this ground is not elaborately argued, because it is not deemed necessary, but it is certainly ·insisted on as conclusive. The court must bear in mind· that Archibald Wilson, the husband, is no party to this deed. It is a conveyance by John Reed to Nancy Wilson. The deed nowhere mentions the husband. By this deed Nancy Wilson acquires an absolute title to the land. Now, admitting it to be true, that Nancy Wilson could, by a parol agreement, create a trust in favor of Reed, the vendor, to hold the land in trust for him— under the ruling in case of Anding et al. v. Davis et al., 39 Miss., 574—I submit that there is no case in this court, from Walker to the last˙decision made, holding that the vendee in a deed can, by parol, create a trust in favor of a stranger to the "deed." The farthest that any decision has gone is the case of Anding et al. v. Davis et al., above cited. In that case, Davis conveyed to Anding, and the bill alleges that there was a parol agreement between these parties to the deed.

˒ But the bill in the present case simply sets forth a parol agreement made by the "wife" to convey land acquired under a deed to which the husband was no party, to him,

whenever he should so request. This short sentence contains the whole case; and it presents the simple question, if John Doe convey land absolutely to Richard Roe, whether Richard Roe can make a binding parol agreement to convey the same land to John Smith, and whether John Smith can be compelled by bill in equity to a specific performance of the contract.

The parol agreement was made in the case of Anding et al., between the "vendor" and the vendee to the deed. It was part of this parol agreement that Anding was to "keep" on hand a will all the time, giving the land and property to the children of the vendor, and the court evidently rested their decision upon this ground.

This court, until the case of Anding, only went to the point of holding that a deed absolute on its face, could be shown by parol to have been intended as a mortgage "between the parties to the deed;" and it is believed that it was only in regard to deeds of personal property that this could be shown.

SIMRALL, J.:

The single question for solution, is, whether on the facts in this case, the wife was a trustee for the husband, and whether the heirs of the husband, can treat the lands in controversy, as held by his widow, as mere trustee for their use.

In Warren v. Brown, 25 Miss., 74, it is laid down in general terms, that the wife cannot be a trustee for her husband, and that purchases made by him in her name will be treated as advances. As a general proposition, this is correct, but it is contended, that inasmuch as a trust results in favor of the person who furnishes the money to pay for land, that trust may be overcome by parol evidence.

Suppenom v. Osborne, 41 Miss., 125, holds that the wife is not bound by any covenant, nor can she be bound by any covenant of her trustee in a deed of separation, nor can she in consideration of separation convey or release to her husband her claims in his estate.

The modes of parting with, or creating estates in, or encumbering her lands, are pointed out by the several provisions of the statutes.

There is no principle of equity more firmly established, than this: "That if a man buys land in the name of another, and pays the consideration money, the land will be held by the grantee in trust, for the benefit of him who advances the money." It was said by Ch. Bameyre, in Dyer v. Dyer, 2 Cox, 92, to be the result of the cases, without exception, that the trust attaches to the legal title, whether freehold, copyhold, or leasehold, whether the title be taken in the name of the purchaser and others jointly, or whether in one or several manners, in favor of the person who advances the money.

The trust results from the act, and is a presumption—a presumption of intention. It is necessary, therefore, to survey carefully each special case to see whether upon the face of the transaction, there is anything to prevent the implication from arising.

If the title be taken in the name of a stranger, towards whom, he, who supplies the money, stands in no close relationship of blood, the trust springs up as an implication of law.

If, however, there exists a moral duty to advance and provide for the recipient of the legal title, as in the case of a son or daughter, or wife, there the advancement of the money by the father, or husband, will be referred to this moral obligation, and will be placed to the account of a natural duty which he is performing; and the presumption instead of being in favor of a "trust," will be that it was a gift by way of advancement and provision. 2 Story Eq. Jur., § 1204; Whitten v. Whitten, 25 Miss., 194.

In the case of the child or wife, the rule is not inflexible, that it shall be a provision or advancement, but only shifts the burden of proof, so that if it shall be clearly proved that it was not meant as an advancement, but that the title was placed in the child or wife, for other reasons, to be held in

trust for the father or husband, then this presumption is overcome.

It is pretty clearly intimated in Whitten v. Whitten (*supra*), that where the conveyance is made to the wife, the presumption of an advancement may be overcome. In Wilton v. Derine, 20 Barb., 10, it is said such presumption will stand, unless the contrary is established by proof. In Jackson v. Matsdorf, 11 Johns., 95, parol testimony consisting of the declarations of the father were received to rebut the presumption of an advancement. Thompson, J., puts it on the ground that a resulting trust not being within the statute of frauds, could be established by parol. Therefore, the contrary, that it did not exist, was open to the same sort of proof. It was held in Lord Altham v. Earl of Anglesia, 2 Salk., 676; Finch v. Finch, 15 Ves., 43; Bartlett v. Pickersgill, 1 Eden., 515, as well settled that parol evidence was admissible to rebut a resulting trust.

There was a class of early cases, such as Walter v. Chriton's case, Pr. Ch., 88; Gaswigne v. Thwying, 1 Ves., 336; Hooper v. Eyles, 2 Vernon, 480; holding that if the deed expressed that the consideration money was paid by the grantee, parol testimony cannot be admitted after the death of the nominal purchaser, to prove a resulting trust, for that it was said, would contravene the statute of frauds and perjuries. But it is now settled otherwise. Linch v. Linch, 10 Ves., jr., 511; Sugd., 598, title: "Land Uses," 325. But if the nominal purchaser, in his life-time, gives a declaration of, or confesses the trust, that would, in the estimation of the elder judges, take it out of the statute. Ambrose v. Ambrose, 1 Pierre Wm., 322; Ryal v. Ryal, 1 Atk., 59. In the former case, the holder of the legal title, after the death of the person who supplied the purchase money, made a written declaration as to whom and for what purpose the money was furnished, the lord chancellor said: "This was evidence of the trust." So would the examination of the nominal purchaser, after the death of the person claiming the trust, been competent to set it up. This would have been good against the

widow, who sought to fix a debt upon the nominal purchaser, and thereby secure to herself a distributive share of it as personalty.

This doctrine of resulting trusts goes in strict analogy to the doctrine of the common law, that where a *feoffment* is made without consideration, the use results to the feoffor."

Parol evidence is admissible to prove that the money was not paid by the nominal purchaser, although so recited in the deed. Linch v. Linch, 10 Vesey, 511, 517.

The principle of advancement has been pushed to the extent of including persons towards whom the person advancing the money, has placed himself in *loco parentis*, as in Beckford v. Beckford, 2 Lofft, 290; an illegitimate child, Elrand v. Dancer, Ch. Ca., 26; a grand-child, whose father was dead, and Currant v. Iago, 1 Coll. C. Ca., 261.

Facts antecedent or contemporaneous with the purchase or so immediately after it, as to constitute a part of the same transaction, may properly be put in evidence for the purpose of rebutting the trust. Lewen on Trustees, 136; Snell's Principles of Equity, 98.

It has been said that a wife cannot be a trustee for her husband (Kingdom v. Bridges, 2 Vernon, 68), but the observation must be construed to mean not that; if the legal title be vested in a wife, upon trust for her husband, the court would not execute the intention; but if the husband take a purchase in the name of his wife, which was the case in 2 Vernon (*supra*), the court will consider the purchase, not as a trust for the husband, but as an advancement for the wife. Lewen on Trusts and Trustees, 85. The deed from Reed to Nancy Wilson, the wife of A. Wilson, was dated June 11th, 1844, acknowledged the 12th of the same month, and filed for record August 1, 1844. The written acknowledgment of the trust, in favor of A. Wilson, by his wife, is dated June 20, 1844. It is not improbable that this paper was executed about the time of the delivery of the deed, "or so immediately after it as to constitute a part of the same transaction." It is almost, if not quite, a contemporaneous recognition of the trust.

The summary of the equity of the bill is, that this pur-
chase, by A. Wilson, from Reed, was not intended as an
advancement for the wife.   In the absence of any other cir-
cumstance than the payment of the consideration money by
the husband, the law would pronounce that there did not
arise a trust; that it was meant as an advancement, is but a
presumption of law, not an absolute, fixed rule; and it is
within the sanction of authority, that this presumption may
be overcome by testimony.   If the complainants can establish
this proposition by clear, convincing testimony, they would
be entitled to relief.

There was no error, therefore, in overruling the demurrer
to the bill.   Decree affirmed, and cause remanded for furthur
proceedings.